(119 App. Div. 184)

## MORRISON v. VAUGHAN.

(Supreme Court, Appellate Division, First Department. May 10, 1907.)

BANKRUPTCY—DISCHARGE—DEBTS NOT SCHEDULED.

Under Bankr. Act July 1, 1898, c. 541, § 17, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], providing that a discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as have not been duly scheduled in time for proof and allowance with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy, where a creditor, whose debt was not scheduled, had such actual knowledge of bankruptcy proceedings as to permit him to participate in all of the proceedings taken, with the exception of the choice of trustee, and the relative value of the creditor's claim as against the claims scheduled, the representatives of which chose the trustee, was such that the deprivation of that right could not be deemed a deprivation of a material right, the creditor's debt was discharged by the discharge in bankruptcy.

Laughlin, J., dissenting.

Appeal from Trial Term.

Action by John Morrison, sole surviving partner of the firm of John Morrison & Co., against William W. Vaughan. From a judgment for plaintiff, defendant appeals. Reversed, and a new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Parsons, Closson & McIlvaine (H. B. Closson, of counsel), for appellant.

James A. & Richard Lynch (John H. Mulchahey and S. B. Livingston, of counsel), for respondent.

CLARKE, J.   This action was brought upon a written guaranty of the performance of a building contract.   The contract was made on the 3d day of July, 1899, between one Hoagland and the plaintiff's firm, under which said firm agreed to finish all the stonework for the fronts of four certain buildings on 117th street, then unfinished, and to supply the necessary stone therefor for the sum of $2,000.   The party of the first part agreed to pay the party of the second part for such labor, work, services, and materials the sum of $2,000, to be paid $1,000 when the platforms and steps of the stoops were all up, and $1,000 when the doorways and columns were up and the stonework on the fronts completed.   On the same day, and under seal, the defendant agreed to guaranty the performance of said contract on the part of the party of the first part, and guarantied the prompt payment of the money becoming due to said John Morrison & Co., on account of the work to be done by him on premises specified in said contract in accordance with the terms thereof; the amount of such guaranty being the sum of $2,000 in payments of $1,000 each, as in said contract provided, which specific sums he guarantied to pay as in said contract provided.

It appeared in evidence that on the 13th of January, 1900, the work had been completed to the point where the first payment of $1,000 was required.   This payment was never made.   This action upon the guaranty was commenced on January 20, 1905, upwards of five years thereafter.   The defendant, in his answer and for a separate defense, alleged that:

"On the 7th day of February, 1900, at the city of New York, in the state of New York, a decree in bankruptcy was duly made and entered in the United States District Court'for the Southern District of New York discharging this defendant from all his debts.   The contract of guaranty made by the defendant set forth in paragraph 4 of the complaint was made, and the default, if any such there was on the part of said Charles B. Hoagland in the performance of his contract with the said John Morrison & Co., set forth in paragraph 2 of the said complaint, occurred before the granting of the said discharge and before the filing by the said defendant in the said bankruptcy proceedings of his petition to be adjudicated a bankrupt, and any liability, obligation, claim, or indebtedness of this defendant to this plaintiff's said firm was provable against the estate of this defendant in such proceedings, and was not, nor was any part thereof, created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity.   The members of said firm of John Morrison & Co. had actual knowledge of said proceedings in bankruptcy in time to avail themselves of the benefits of the United States bankruptcy law, for such case made and provided, equally with the other creditors of this defendant."

The contract of guaranty was made on the 3d day of July, 1899. On the 4th day of November, 1899, the defendant duly filed in the office of the clerk of the District Court of the Uinted States for the Southern District of New York a petition to be adjudged a bankrupt, together with the schedules in triplicate required by the rules, and on the same day was duly adjudged a bankrupt.   The liabilities of the

bankrupt, according to such schedules, amounted to $224,934.51, and his assets, collectible and uncollectible, $186,516. There were 46 secured and unsecured creditors, and he was contingently liable on 28 negotiated bills and notes according to said schedules. The debt here sued on was not scheduled.

It is not permissible to infer that the omission to schedule a debt of $1,000, when debts to the amount of upwards of $224,000 had been scheduled, was intentional or fraudulent. The reasonable inference is, as this debt was a contingent liability upon a guaranty for the performance of a contract by another in regard to which there had been at that time no breach, and which was not as matter of fact breached until $2\frac{1}{2}$ months thereafter, that this contingent liability, not appearing in the books of the bankrupt from which the schedules were made up, was overlooked. Although this debt was not scheduled, and no written notice was sent to the plaintiff's firm of any of the proceedings in the bankruptcy court, either by the defendant or the receiver or trustee in bankruptcy, yet, nevertheless, it appears from the uncontradicted testimony in this case that the plaintiff had actual knowledge of the proceedings in bankruptcy. He testified that he read in the papers of the defendant's bankruptcy, and that that was the reason why he had waited five years to bring this suit; that he thought there was no use going after him then. He further testified that when he obtained information from the same source—that is, by reading in the newspapers —of the defendant's father having retired from Wall Street with a large amount of money, the schedules were then examined to make sure that his debt was not included therein, and then he brought this action. The defendant and another witness, who was his clerk, testified positively that in November or December, 1899, they both had a conversation with the plaintiff, in which they informed the plaintiff that the defendant was then in bankruptcy, and was working for the receiver. The plaintiff did not deny the testimony of either of these witnesses. The fact, then, that plaintiff did have actual knowledge of the defendant's bankruptcy in November or December, 1899, is established without contradiction. It appears that the meetings of creditors were held, and the examinations of the bankrupt were had, and continued from the 24th of November, 1899, to the 10th of January, 1900; that the bankrupt was discharged on the 7th day of February, 1900; and that the first dividend was declared and paid on April 17, 1900.

The liability under the guaranty, as claimed by the plaintiff, became fixed on the 13th of January, 1900. Section 17 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]) provides that:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such * * * have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy."

In Birkett v. Columbia Bank, 195 U. S. 345, 25 Sup. Ct. 38, 49 L. Ed. 231, the Supreme Court of the United States, in interpreting section 17, supra, said:

"Actual knowledge of the proceedings contemplated by the section is a knowledge in time to avail a creditor of the benefits of the law in time to give him an equal opportunity with other creditors, not a knowledge that may come so late as to deprive him of participation in the administration of the affairs of the estate, or to deprive him of dividends."

While the plaintiff had no written notice of the bankruptcy proceedings, he had notice, derived from reading the newspapers and from the verbal communication of the defendant and his clerk, which gave him actual knowledge of the proceedings in bankruptcy within a short time after the filing of the petition, with opportunity to have filed and proved his own claim, to have participated in the meetings of the creditors, to have joined in the examination of the bankrupt and his father, and also to have participated in the first and subsequent dividends declared and paid; in short, to have participated in all the proceedings taken, with the exception of the choice of the trustee. In consideration of the relative value of plaintiff's claim as against the $224,000 of scheduled claims, the representatives of which exercised that choice, this cannot be considered to have been a very material deprivation of any of his rights; that is, he received notice and actual knowledge in time to have participated in all of the material proceedings and to have secured his proportional share of the bankrupt's assets. This being so, it seems to me that the language of the bankruptcy act, supra, precisely covers this case, and that this debt was discharged by the discharge in bankruptcy.

It follows, therefore, that the verdict should have been directed for the defendant, and not for the plaintiff, and that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, P. J., and INGRAHAM and SCOTT, JJ., concur.

LAUGHLIN, J. (dissenting). There was no evidence tending to show that the respondent, an unscheduled creditor of the bankrupt, had notice of the bankruptcy proceedings on or before November 24, 1899, on which day the creditors met and appointed a trustee. Participation in the appointment of a trustee is one of the rights conferred upon creditors. Bankr. Act July 1, 1898, c. 541, § 44, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3438]. I am of the opinion that it should not be held that an unscheduled creditor has had "notice or actual knowledge of the proceedings in bankruptcy" (section 17, subd. 3, Bankr. Act 1898) unless he has had notice or actual knowledge in time to exercise all of the rights of a creditor, as if he had been duly scheduled, for in no other way is he given an equal opportunity with other creditors to participate in the administration of the estate and to protect his rights; and such, I understand, to be the effect of the decisions of our Court of Appeals and of the Supreme Court of the United States in Columbia National Bank v. Birkett, 174 N. Y. 122, 66 N. E. 652, 102 Am. St. Rep. 478, affirmed in 195 U. S. 345, 25 Sup. Ct. 38, 49 L. Ed. 231.

The court was therefore warranted in directing a verdict in favor of the respondent, and the judgment should be affirmed, with costs.