## In re HEDLEY.

(District Court, W. D. New York. September 21, 1907.)

### No. 2,165.

1. BANKRUPTCY—RIGHT TO DISCHARGE—FRAUDULENT TRANSFER OF PROPERTY.

Where a bankrupt, who, although insolvent, was transacting business for his wife under a written power of attorney, several years before his bankruptcy assigned certain certificates of stock standing in his name to her, and placed the same in a box in his possession in which he kept her papers, the facts that such certificates were not actually delivered to her and that she did not know of the assignment are not sufficient to show that the transfer was fraudulent as against his creditors and to defeat his right to a discharge.

2. SAME—CONCEALMENT OF ASSETS.

Evidence considered, and *held* insufficient to sustain objections to a bankrupt's discharge on the ground of concealment of assets from his trustee.

In Bankruptcy. On motion to confirm report of special master recommending the bankrupt's discharge.

Cummings & Cummings, for bankrupt.
Edward L. Jellinek, for trustee and objecting creditor.

HAZEL, District Judge. On a prior reference to the special master the specifications of the objecting creditor, who is also the trustee herein, alleged that the bankrupt omitted to keep books of account from which his true financial condition could be ascertained, and that with fraudulent intent and in contemplation of bankruptcy he destroyed his books from which his financial status could have been ascertained. The special master, after consideration of the evidence, recommended a discharge by this court, and at the hearing for confirmation of the report the objecting creditor was given leave to file amended specifications, setting forth that the bankrupt concealed certain property from his trustee and that he had made a false oath in omitting to schedule such assets. A report in favor of a discharge has again been filed, and the same is now before me for confirmation.

The trustee, again opposing the discharge, practically abandons the grounds mentioned in the earlier specification and lays stress upon the testimony applicable to the amended specifications. The claim of the trustee arose from a deficiency judgment recovered November 1, 1902, which was assigned to him. The bankrupt was adjudicated on his voluntary petition on June 21, 1905. I do not intend to discuss the evidence in detail. It will suffice to refer to it in a general way only. It tends to show that in all of the principal transactions herein involved, and since November 29, 1898, the bankrupt under a written power of attorney acted as the agent of his wife. Such power of attorney was not recorded; its authenticity resting solely upon the testimony given by the bankrupt and his wife. Prior to the enactment of the present bankrupt act, the bankrupt borrowed from his wife about $7,000 or $8,000, and subsequently an interest amounting to about $12,000 in a certain mortgage covering real estate located at Cleveland, Ohio, was assigned to her. The testimony is silent as to whether such assign-

ment was to secure the amount borrowed, or whether it was in fact an investment for the benefit of the lender, made by the bankrupt, who was engaged in business as a real estate broker. The oral testimony as to the accounts, loans, and ownership of stock is not free from the criticism of indefiniteness. The bankrupt did not at any time prior to his bankruptcy claim in any of the transactions in controversy to be acting as agent for his wife, and at the time of filing the petition in bankruptcy he held in his own name certain certificates of shares of stock in several land companies, and at the same time acted as an officer or director in some of such companies. Such shares of stock are claimed by him to have been assigned to his wife in the years 1897 and 1901, respectively, without actual delivery thereof being made or the assignment recorded on the books of the company. The shares of stock in the Military Road & Kenmore Land Company and the Enterprise Land Company, which were assigned to his wife in writing indorsed on the certificates thereof, were kept in a box in the office where other papers belonging to his wife were kept, though she did not have actual knowledge of such assignments to her.

It is claimed by the trustee that the transfer was colorable and in fraud of creditors; but I do not think such an inference is warranted from the mere assignment and failure to deliver, as the presumptions of law are in favor of the innocence of an alleged wrongdoer. To effectuate a legal transfer of the shares of stock mentioned it was not necessary to make manual delivery to the assignee. While ordinarily, to complete an assignment of personal property, there should be a delivery and acceptance thereof by the assignee, yet as the assignment in question was placed with papers and documents belonging to the wife, though remaining in the possession of her husband, a delivery and acceptance thereof will be presumed. Indeed, the rule is that, where the assignor is the agent of the assignee, he may in behalf of the assignee accept the assignment from himself. 4 Cyc. 29, note.

The specific questions for decision arise from the asserted fraudulent concealment by the bankrupt of the property consisting of the shares of stock already mentioned and certain other shares or capital stock in the Delevan Terrace Land Company and Rochester Land Company, a certain claimed equity in the so-called Colby mortgage, and certain bonds of the Western New York Land Company. That there was such concealment would be beyond serious question, if the power of attorney from the wife to the husband, together with the abovementioned assignments, were colorable and for the purpose of keeping such property from the creditors of the bankrupt. Under the well-settled rule the objecting creditor, to succeed in his contention, must establish by clear and convincing proof that the bankrupt, since he was adjudicated, has with fraudulent intent concealed from his trustee property belonging to his estate. It is important to consider whether the power of attorney which authorized the bankrupt in behalf of his wife to sign and execute any and all instruments, transfer her property, and in fact conduct all business in her name, is entitled to any weight as corroboratory of the claim of the bankrupt. Was it made in good faith, or was it brought into the record to deceive the court, and to conceal the true ownership of the property in controversy? The mas-

ter, who has given the testimony careful consideration, reached the conclusion that the document on its face appeared to have been executed at about the time it bears date. The worn appearance would seem to indicate that it was prepared and signed some years ago, and probably it has some weight entitling it to consideration with the testimony of the bankrupt and his wife on this point.

True, there are suspicious circumstances, and the indefiniteness of the testimony justified the hesitation evinced by the master to report in favor of the bankrupt's discharge; but, after careful consideration, I also conclude that the trustee has not affirmatively shown his asserted claims by convincing proof. The bankrupt, while insolvent, at different times obtained money from his wife, amounting in the aggregate, as already stated, to $7,000 or $8,000, which are claimed to have been used in real estate transactions for her benefit. There is nothing unusual in a man transacting business in the name of his wife, though concededly it was somewhat out of the ordinary to have an insolvent husband act as agent for his wife without disclosing that fact. It should be remembered that the bankrupt act was passed to enable those who were unfortunate in business "to emerge from a questionable and undignified seclusion and face the vicissitudes of the business world openly and honestly," as Judge Coxe remarked in Re Fitchard (D. C.) 103 Fed. 742, where the relationship of a husband as agent for his wife was discussed. As suggested by the master, the bankrupt, Hedley, though apparently insolvent and unable to cope with his more successful rivals in business, deemed it desirable by fatuous pretense to conceal his insolvency and his true position as long as possible. Such conduct, however, on his part, was in my opinion not sufficient ground for withholding a discharge.

The specifications are overruled, the report of the master is confirmed, and the discharge is granted.