## In re MAUZY.

### (District Court, N. D. West Virginia. September 5, 1908.)

BANKRUPTCY—APPLICATION TO REVOKE DISCHARGE—LACHES.

> Creditors *held* barred by laches from the right to have the discharge of a bankrupt revoked, it appearing that they had knowledge of the alleged fraudulent transfers of property by the bankrupt, relied on to invalidate the discharge, before the institution of the bankruptcy proceedings, and instituted a suit to set the same aside which was afterward abandoned, and that they took no steps to have the bankrupt examined, and made no objection to his discharge.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 868.]

In Bankruptcy. On application for revocation of discharge.

C. O. Strieby, for petitioners.
B. H. Heiner and F. O. Blue, for bankrupt.

DAYTON, District Judge. Mauzy, a man doing large business of a mercantile and trading character, a former sheriff of his county, made a general assignment December 2, 1904, for the benefit of his creditors to Hiner, trustee, who instituted suit in the state court seeking its aid in the administration of his trust. Such proceedings were there had that the real and personal estate of Mauzy with the liens, charges, and debts were ascertained by a master commissioner, and, by decree of the state court, sale of such real estate was made and confirmed and distribution of the proceeds to creditors directed. More than two years after, on February 3, 1906, Mauzy, on his voluntary petition filed in this court, was adjudged bankrupt, and on July 24, 1906, without objection, in regular proceedings had, a discharge was granted him. Thompson, Moyer, and Warner, three creditors, on June 7, 1907, filed their petition to vacate this discharge on the grounds: (a) That the bankrupt and his wife are residing in a valuable residence property, which they charge to be that of the bankrupt, but which was conveyed to his mother-in-law for the purpose of defrauding his creditors, and that he has expended near $2,000 in improvements made thereon; that this conveyance was made to his mother-in-law in accordance with an agreement made with his wife and recorded in 1906 upon a flyleaf of Deed Book No. 42 in the county court clerk's office, which writing is dated May 15, 1903, and is charged to have been fraudulently antedated and recorded. (b) That a large amount of store accounts, judgments, and choses in action belonging to the bankrupt had been fraudulently collected by, or assigned to, his wife or mother-in-law. (c) That the bankrupt some time before his adjudication had sold a house and lot owned by him and had taken the vendor's notes in payment thereof and assigned them to his wife. (d) That on October 17, 1898, the bankrupt purchased 600 acres of land in the joint name of himself

and his wife, who paid nothing therefor, and the half interest so conveyed to his wife was not turned over either to Hiner, trustee, in the assignment nor listed in his bankrupt schedules. It is charged, further, in this petition that these creditors were not chargeable with laches in failing to resist the granting of the discharge because they had no notice of the application of Mauzy therefor, and because, until within a very short time prior to the filing of their petition, they were wholly ignorant of the bankrupt's acts complained of, which concealed and withdrew from creditors the properties referred to. This petition was referred to a referee as special master to take evidence and report. He has filed all the testimony taken, which is very voluminous, and with it a report not recommending the vacation of the discharge, but that certain sums be collected by reason of notes collected by the wife and by reason of improvements made by the bankrupt upon the property held by the mother-in-law. The application to vacate this discharge is based upon section 15 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]), which provides:

"The judge may, upon the application of parties in interest who have not been guilty of undue laches, filed at any time within one year after a discharge shall have been granted, revoke it upon a trial if it shall be made to appear that it was obtained through fraud of the bankrupt, and that the knowledge of the fraud has come to the petitioners since the granting of the discharge, and that the actual facts did not warrant the discharge."

After long and careful consideration of all the facts presented in this voluminous record, I am convinced that, no matter what views I may entertain touching the transactions complained of between Mauzy, his wife, and mother-in-law, these petitioning creditors have failed to show themselves free from laches and of knowledge of the facts prior to the granting of the discharge amply sufficient to have enabled them to file objections to Mauzy's original application therefor. It is to be borne in mind that, under this section, the power of the judge to revoke a discharge is confined and limited. It must be exercised (a) upon application of parties in interest; (b) within one year after it has been granted; (c) upon a trial in which it must be shown by petitioners that they have (d) not been guilty of undue laches; (e) that the discharge was obtained through the fraud of the bankrupt; (f) that the knowledge of said fraud has come to the petitioners since the granting of the discharge; and (g) that the actual facts did not warrant the discharge. In each and every one of these particulars the burden of proof is upon the petitioners, and each requirement of the statute is absolutely essential to be proven.

"It will be noted that a revocation of the discharge may be made upon the application of parties in interest who have not been guilty of undue laches, if it shall be made to appear that the discharge was obtained through the fraud of the bankrupt, and that knowledge of such fraud has come to the petitioners since the granting of such discharge, and it shall also appear that the actual facts did not warrant the discharge. All these conditions must exist." In re Upson (D. C.) 124 Fed. 980, 10 Am. Bankr. Rep. 758. "The purpose of this limitation is to restrict this process to those frauds which shall be discovered after the discharge." Collier on Bankruptcy, § 209. "A discharge will

not be vacated unless the court is satisfied that the creditor or his rep-resentatives had no knowledge of the objections at the time the discharge was granted. Where an attorney has knowledge of an objection, it will be presumed that the client knows the same facts." Loveland on Bankruptcy, § 865. "A discharge in bankruptcy not being voidable for causes previously known to the creditor, no order to take testimony should be made upon a petition to vacate the discharge, unless the petition shows affirmatively reasonable cause to believe that the creditor was ignorant of the ground specified when the discharge was granted." In re Bates (D. C.) 27 Fed. 604. See, also, In re Oleson (D. C.) 110 Fed. 796; In re Douglass (D. C.) 11 Fed. 403; In re Hoover (D. C.) 105 Fed. 354; Morrison v. Vaughan, 119 App. Div. 184, 104 N. Y. Supp. 169, 18 Am. Bankr. Rep. 704; In re Kolster, 119 App. Div. 184, 104 N. Y. Supp. 169, 17 Am. Bankr. Rep. 52; In re Griffin Bros. (D. C.) 19 Am. Bankr. Rep. 78, 154 Fed. 537; Matter of Winchester (D. C.) 19 Am. Bankr. Rep. 227, 155 Fed. 505; In re Hedley (D. C.) 19 Am. Bankr. Rep. 409, 156 Fed. 314; In re Dauchy, 11 Am. Bankr. Rep. 511, 130 Fed. 532, 65 C. C. A. 78. In this latter case, decided by the Circuit Court of Appeals for the Second Circuit, many of the facts were similar to those presented here. In the opinion rendered by Cox, Circuit Judge, it is said:

"The questions presented were, first, whether the bankrupt since the adjudication, June 24, 1901, knowingly and fraudulently concealed from her trustee real property, located at Lansingburgh, N. Y., and Nantucket, Mass., belonging to her estate in bankruptcy; and, second, whether she knowingly and fraudulently made a false oath when she swore to the correctness of her schedules, which omitted this property. The principal accusation of fraud is based upon the conveyance by the bankrupt of the Nantucket property to her father, and by him to her son, over two years prior to the adjudication in bankruptcy. At the time the petition was filed and the schedules verified the legal title to this property was not in the bankrupt, and had not been for two years and seven months. The transfer to her son, conceding it to be fraudulent as to then existing creditors, has not been made by the act a sufficient ground for refusing a discharge. About this there is no disagreement. In order to establish a fraudulent concealment, it must appear that the property concealed, belongs to the bankrupt's estate. It must be shown that the transfer was merely a temporary expedient to place the property beyond the reach of the trustee, the title to be resumed as soon as prudence will permit. In other words, it must be proved that a secret trust exists in her favor, and that her son is under agreement, expressed or implied, to reconvey the property to her when the danger of attack by the creditors has passed. Were we permitted to indulge in speculation and guesswork and substitute suspicion for proof, it would not be difficult to sustain the creditors' contention; but the burden is upon them to establish by clear and convincing evidence that the bankrupt has been guilty of the offenses alleged. In this they have failed. The referee and the District Court concur in finding that there is insufficient proof to show that the bankrupt retained an interest in the property conveyed, and we are constrained to reach a similar conclusion. The law as originally passed, and since the amendments of 1903, does not prevent a discharge in cases of this character. If the law be inadequate or defective in this regard, the remedy is with Congress and not with the courts."

In Re Tiffany (D. C.) 17 Am. Bankr. Rep. 296, 147 Fed. 314, it is held:

"Where an act by a trustee to set aside an alleged fraudulent transfer of property by the bankrupt to his wife, made anterior to the four-months period, results unfavorably to the trustee, creditors, urging the same transaction as a

ground of objection to the bankrupt's discharge, are concluded by the judgment rendered in the trustee's action, although an appeal therefrom has been taken."

The evidence in this case clearly discloses that the 600 acres of land was conveyed to Mauzy and his wife jointly in 1898 by deed duly recorded in that year. This was more than seven years prior to the adjudication in bankruptcy, and, if this half interest was so secured to be conveyed to his wife as a voluntary act, not based on valuable consideration, under the West Virginia statute, it was incapable of being assailed as voluntary conveyance after the lapse of five years. The evidence further shows that the conveyance of the residence property in Franklin to Mrs. Harper, the mother-in-law, originated in an agreement dated the 15th day of May, 1903, between Mauzy and his wife, whereby he recognized himself as having paid $650 of a total purchase price of $2,600 upon said property by reason of an exchange of another property, and also recognizes and states himself to be indebted to his said wife in certain sums of money, fully set forth, belonging to her separate estate and amounting to a total of $1,276.21. And he transfers to her said residence property, credits said debt due her with the said $650 and its interest, and bound himself to expend the balance in improvements on the property during the year following.

Whatever doubt there may exist as to the time when this agreement was actually recorded or executed, there can be, and is, no dispute that its existence was known by these creditors when the bill was filed in the said court by Hiner, trustee in the general assignment made by Mauzy, and this period was more than two years before this discharge was granted. By this contract title passed from Mauzy to his wife, and her subsequent securing of the legal title to be made to her mother in 1906 can in no way be material to the case under the principles laid down in Re Tiffany, supra. But, in addition to this, it is clearly shown that in this proceeding in the state court upon reference to the master these matters were inquired into, all the real estate and personal property of Mauzy was ascertained, the debts and their order or priorities determined and decree entered selling the same, and that no successful effort was made in this proceeding to require said trustee to sue for or seek to obtain any right to sell, by reason of fraud or otherwise, this residence property or the half interest in the mountain farm. And it is further shown in the testimony that many of the creditors, including these petitioners, in a conference at Circleville, agreed to and did contribute to a joint fund raised for the purpose of employing counsel to institute suits, having in view the setting aside of these conveyances as fraudulent, and to secure the interests of Mrs. Mauzy and Mrs. Harper in these properties to be sold for their benefit, and that such counsel were employed, and such suit instituted, but subsequently abandoned and dismissed for want of prosecution.

These facts, and the still further one that no demand was made to have an examination of said bankrupt before the referee touching these matters when his petition in bankruptcy was pending and before discharge had been granted, and that no objections were filed to the granting of such discharge, although it seems clear that petitioners had knowledge of the pending of such bankruptcy proceeding, renders

it absolutely impossible for me, under the well-settled principles established by the decisions, to grant the prayer of this petition and vacate this discharge, but, on the contrary, this proceeding must be dismissed at the cost of petitioners.