In the Matter of James McClellan
LEACH, Bankrupt.

No. 2054.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Sept. 7, 1961.

Sam Sexton, Jr., Fort Smith, Ark., for petitioner.

Charles A. Beasley, Fort Smith, Ark., for respondent.

JOHN E. MILLER, Chief Judge.

This is a petition by a Trustee in Bankruptcy to review the Referee's order

of May 4, 1961, denying Trustee's petition to revoke discharge and to recover assets. Before discussing the grounds alleged by petitioner to revoke the discharge of the bankrupt, the court feels that a review of the bankrupt's business operations and a chronological history of the proceedings in the case during the past three-year period is in order for purposes of clarification of the present issues.

The bankrupt had been engaged as former owner and operator of the Modernistic Floor Covering Company, and is presently self-employed as owner and operator of Leach Paragon Photography Studio. In the former business the bankrupt was self-employed as a floor covering contractor until he terminated the business due to the pressure of his creditors and his bank on August 27, 1958. The business had begun as a partnership in June 1947, and had operated as such until July 30, 1957, when the partnership was dissolved, leaving bankrupt as the sole owner and operator.

Bankrupt has owned and operated the Paragon Photography Studio since March 1958, which enterprise is chiefly engaged in the photographing of furniture for factories and stores for advertising and the making up of salesmen's samples. Bankrupt had done this sort of work on a smaller scale for many years prior to March 1958, but due to encouragement from Mr. John McConnell he opened the studio as a business separate from the floor covering company. From March 1958 to August 27, 1958, when the floor covering company was terminated, the bankrupt operated the two businesses and during thaat time diverted a total of $3,000 in profits from the studio to the flooring company.

By a bill of sale dated March 27, 1958, bankrupt conveyed $3,987.26 worth of photographic equipment to Mr. McConnell, who at that time was constructing a building suitable to house the equipment to be used by bankrupt in the operation of the studio. At that time the arrangement between the bankrupt and Mr. McConnell was that the title to the photographic equipment and building would be in McConnell, and he would lease them to the bankrupt, who was to be the sole operator of the studio. This arrangement continued until January 1960, when bankrupt signed a note to repurchase the photographic equipment. At present bankrupt is solely engaged as owner and operator of the studio.

As for the history of this case, a voluntary petition was filed by the bankrupt on October 4, 1958, and the order of adjudication was made and entered on October 6, 1958. The first creditors' meeting was held on October 24, 1958, and on the same date the petitioner was duly appointed Trustee and subsequently qualified.

On April 29, 1959, an objecting creditor, C. C. Gunn Distributing Company, by its attorneys, filed a petition to recover an alleged preference and to prevent discharge of bankrupt. Counsel for the objecting creditor did not serve a copy of this petition upon the bankrupt or upon his attorney. On May 1, 1959, an order was made by the Referee fixing the time for filing of objections to the discharge of the bankrupt. This order set the final date for filing such objections as June 1, 1959. No further objections were filed during this period, and on July 6, 1959, an order was made and entered discharging the bankrupt as provided by law.

In December 1959 an oral objection to the discharge was made by counsel for the objecting creditor, and on December 16, 1959, the Referee peremptorily entered an order revoking the order of discharge until such time as the court could have a hearing on the objections to the discharge.

On December 24, 1959, the bankrupt moved to dismiss the objecting creditor's petition and to reinstate the discharge of the bankrupt.

On January 13, 1960, the Referee ordered that a hearing be held on February 15, 1960, on the objection to the discharge. This hearing was subsequently postponed until March 18, 1960.

On February 19, 1960, the objecting creditor filed amended specifications of

objections to the discharge in which it alleged that the bankrupt had committed an offense under Sec. 152, Title 18 U.S.C., in that he was guilty of concealment of assets and having made false oaths and claims in his petition for bankruptcy and that he had issued two financial statements containing incorrect statements as to his assets at the time upon which the creditor relied to its detriment.

On February 25, 1960, the bankrupt filed a response to the amended specification of objections again requesting the dismissal of the objections and denying all material allegations of the amended specification.

The Referee conducted a hearing on March 18, 1960, on the creditor's objections. The Referee did not make formal findings of fact or conclusions of law, but on April 18, 1960, again entered an order discharging the bankrupt.

On April 27, 1960, the objecting creditor filed a petition to review this order, and on May 14, 1960, the Referee certified the matter to this court. On June 6, 1960, this court affirmed the order of the Referee, dismissing the objecting creditor's specifications of objections and granting the bankrupt a discharge on the basis that the original petition of the objecting creditor did not constitute a sufficient compliance with General Order 32, requiring an objecting creditor to file specifications of objections, and that the petition was not a proper basis for amended specifications of objections filed subsequent to the dead-line time for filing objections. In view of this holding the court did not deem it necessary to pass upon the question of whether the bankrupt obtained money or property on credit or obtained an extension or renewal of credit by the making of the allegedly false financial reports. See, In re Leach, D.C.W.D.Ark.1960, 197 F.Supp. 32.

On November 29, 1960, the Trustee filed his petition to revoke discharge of April 18, 1960, and to recover assets of the bankrupt estate. Generally, said petition asked for a revocation of the discharge granted and denial of said discharge for the reason that the bankrupt allegedly failed to disclose either in his schedule of assets or otherwise the fact that he was the owner of photographic equipment and supplies having a value of $3,987.26; that such failure was deliberate, intentional and fraudulent, and was unknown to the Trustee until about March 18, 1960. In addition, the petition prayed for an order directing the bankrupt to turn over to the Trustee the assets alleged to have belonged to the bankrupt and to have been concealed and withheld from Trustee.

On December 12, 1960, the attorney for the bankrupt filed a response to the above petition. On December 13, 1960, the matter was referred by this court to the Referee to take such further proceedings as are required and permitted under the act of Congress relating to bankruptcy. On December 16, 1960, there was filed "First Amendment to Response to Petition to Revoke Discharge and to Recover the Assets of the Bankrupt Estate."

On January 13, 1961, a hearing was held by the Referee, at which time both sides presented evidence in support of their respective contentions. A transcript of the testimony was made by the reporter, and is in the record. Also, the testimony was summarized by the Referee in his certificate to the court.

On May 4, 1961, the Referee entered an order denying Trustee's petition to revoke the discharge and to recover assets of the bankrupt estate.

In his order of the above date the Referee stated the essential facts, as follows:

"At the time of filing his petition in bankruptcy on October 4, 1958, the Bankrupt noted by way of an appendage to his Petition, relating to Transfer of Property, that some six months before the filing of the Petition he had transferred on a bill of sale to J. B. McConnell, Jr., dba McConnell Construction Company the title to certain miscellaneous photographic equipment and supplies owned by the Bankrupt, and went into some detail as to the con-

sideration for such transfer-sale. On the date the bankruptcy petition was filed the legal owner of such equipment appeared, as a matter of record, to be J. B. McConnell, Jr. It appears that since the petition was filed, the Bankrupt has entered into an agreement of repurchase of this equipment from J. B. McConnell, Jr., and, as of this time, the Bankrupt again holds the legal title to such equipment."

In the same order the main issue was stated, thusly:

"The Trustee contends that the transfer of title to the equipment to J. B. McConnell, Jr., was fraudulent and asks this Court to order the Bankrupt to turn this equipment over to the Trustee, now that the Bankrupt has repurchased this equipment from J. B. McConnell, Jr. and now holds legal title. The Attorney for the Bankrupt and the Bankrupt contend that the original transfer was a legal sale, without taint of fraud, and that, regardless, the petition to revoke the discharge was not timely filed."

As to the allegation of fraud the Referee made the following finding:

"Second, I do not find that the allegation of fraud made by the Trustee has been proven. The transaction relating to the original sale of the photographic equipment to J. B. McConnell, Jr., as noted on the Bankruptcy Petition appears to be a reasonable and satisfactory explanation of the occurrence and indicates no attempt at concealment of an ordinary set of circumstances surrounding a sale, which sale appears both ordinary and reasonable. The credulity of this Court is not strained to comprehend this transaction as one which might be consummated in the ordinary course of business events. And nothing which has been introduced in evidence in the course of the several hearings which have been held in this case proves the fraud alleged. In fact

the testimony introduced at the hearings tends to support the narration in the petition of the facts asserted by the Bankrupt to exist. The fact that the Bankrupt, after the filing of the Bankruptcy Petition, undertook to repurchase the equipment theretofore sold is viewed by this Court as being a normal business transaction, inasmuch as photography is apparently a part of the way of life of the Bankrupt."

On May 13, 1961, the Trustee filed a "Petition to Review Referee's Order Denying Trustee's Petition to Revoke Discharge and to Recover Assets," in which it is alleged:

"Your petitioner, being aggrieved by the said order, prays for review thereof and prays [sic] that the court committed an error in making said order in the following particulars: (a) the determination of the referee was not justified by the evidence in the case in that the objecting party sustained the burden of proof cast upon him by law; (b) that undisputed evidence showed that the bankrupt concealed assets from the estate and that said actions were fraudulent and that the referee erroneously held that the objecting party sustained the burden of proof as to all the allegations of the petition."

On July 21, 1961, the Referee certified the matter to this court. Since that date memorandum brief in support of and memorandum brief in opposition to the above petition have been furnished the court.

In his certificate to this court the Referee, after having summarized the testimony taken at the hearing on January 13, 1961, on Trustee's petition to revoke discharge and to recover assets of the bankrupt estate, and after having "considered all matters, including prior hearings and petitions," reached the following conclusion:

"I agree with the Trustee that without proper explanation, some of

the testimony of the Bankrupt at the hearing held on March 18, 1960, tends to lend credence to the Trustee's contention that property belonging to the Bankrupt Estate had been concealed from the Trustee, or at least not fully revealed to him. The Bankrupt's statements at that hearing to the effect that the business was his tended to indicate that the ownership of the photographic equipment, presently in issue, had been in the Bankrupt at the time of filing the petition. I feel that these statements were susceptible of more than one interpretation and that the Bankrupt has satisfactorily explained them by his subsequent testimony that it was the 'business entity' he was referring to as having belonged to him at the time the Petition in Bankruptcy was filed.

"The Bankrupt asserts that some six months before filing for bankruptcy, he executed a bill of sale for his photographic equipment to Mr. McConnell. Even considering his testimony that he thought he was executing a mortgage, the bill of sale is a matter of fact and has not, as such, been attacked. I do not recognize as invalidating such bill of sale the thoughts of the Bankrupt. Inasmuch as this bill of sale has not been attacked directly in any court, either by the Bankrupt or the Trustee, to prove that it should have been a mortgage, and inasmuch as the Bankrupt is obviously content with the fact that he signed a bill of sale instead of a mortgage, I feel I am bound to accept the document for what it appears on its face to be: a valid, legal, binding bill of sale between the Bankrupt and Mr. McConnell.

"The Trustee asserts that it was not until March 18, 1960, that he was alerted to the alleged concealment of assets. Diligent pursuit of the facts disclosed by the Bankruptcy Petition would have revealed at a much earlier date all that has been revealed in the last year and a half. The lapse of time in establishing what the Trustee believes to be the fact can not lend its weight to the allegation of concealment.

"In other words, had the Trustee, within the first six months after the filing of the petition, learned of the alleged concealment, that issue would have been negligible. So I do not feel that the allegation of 'concealment' can be enhanced merely by the passage of time; I feel that time alone can give the allegation no aura of authenticity.

"Sufficient revealment of the Bankrupt's connection with the Paragon Studio—and its equipment—was made in the Petition in Bankruptcy to alert the Trustee to the possible necessity of delving further into that phase of the proceeding without delay. Now at that time there was a bill of sale between Mr. Leach and Mr. McConnell, legal on its face. In order to accept the contentions of the Trustee I feel that the bill of sale would have to have been proved illegal and consummated for the purpose of fraud by both Mr. Leach and Mr. McConnell. The burden of proof as to this has not been sustained by the Trustee.

"It does not seem just for a Trustee to be able to take advantage of the fact that, after the filing of the Bankruptcy Petition, the Bankrupt repurchased property formerly owned by him, and to allow the Trustee to bypass all the legal steps to set aside a sale he feels is fraudulent and through proceedings in this Court seize the property now in the hands of the Bankrupt, without a complete and decisive showing of the permeation of the fraud throughout the entire transactions. The Trustee is attempting to accomplish indirectly that which should be accomplished directly, if at all. Unless the fraud alleged had been clearly proved this property, purchased by the Bankrupt after the filing of the pe-

tition, is not within the jurisdiction of this Court, any more than any other property purchased by the Bankrupt after the filing of his bankruptcy petition.

"The fact that the Bankrupt later repurchased the photographic equipment seems to be the focal point for the suspicions that the original sale may not have been *bona fide*. However, the transactions must also be viewed as they existed at the time of the filing of the bankruptcy and these subsequent transactions *alone* can not be used to change the facts as they existed at the time of the original filing. Unless I could find that the transaction that took place some six months before the filing of the bankruptcy and the transaction that took place some fifteen months after the filing of the bankruptcy are part and parcel of each other, and both a subterfuge to defraud the creditors of the Bankrupt, I could not grant the Trustee's petition. I did not find that the proof supported a finding such as this.

"I am of the opinion that the Trustee wholly failed to establish any act of the Bankrupt that would be sufficient to require a revocation of his discharge. I am further of the opinion that there have been proven no facts to justify the prayer of the Trustee's Petition, looking to the recovery of assets alleged to belong to the Bankrupt Estate."

■ As stated by this court in the case of In re Carroll, D.C.W.D.Ark.1955, 128 F.Supp. 428, 433:

"It is elementary that the Court must accept the Referee's findings of fact unless they are clearly erroneous. Bankruptcy General Order No. 47, 11 U.S.C.A. following section 53; Walker v. Commercial National Bank of Little Rock, Ark., 8 Cir., 217 F.2d 677, 681; In re California Associated Products Co., 9 Cir., 183 F.2d 946, 950; Dunsdon v. Federal Land Bank of St. Paul, 8 Cir., 137 F.2d 84; Equitable Life Assur. Soc. of United States v. Carmody, 8 Cir., 131 F.2d 318, 322; In the Matter of Springs Investment Co., a corporation, D.C.Ark., 123 F.Supp. 856; In re Watson, D.C.Ark., 99 F.Supp. 49, 51; In re Taylor Oak Flooring Co., D.C.Ark., 87 F.Supp. 6, 9; In re Sossaman, D.C.Ark., 39 F.Supp. 113; In re Mays, D.C.Ark., 38 F. Supp. 958, 961, affirmed in 8 Cir., 125 F.2d 693."

■ The court has minutely examined and considered the entire record in the instant case, together with the briefs, and has concluded that the Referee's findings of fact are based upon substantial evidence and are not clearly erroneous. Equitable Life Assur. Soc. of United States v. Deutschle, 8 Cir., 1942, 132 F.2d 525. In addition to the substantive evidence, the Referee had the opportunity to observe the demeanor of the interested parties while they were testifying, and to judge their credibility as witnesses. In re Terry, D.C.E.D.Ark. 1951, 97 F.Supp. 635. His findings are ·fully sustained by the record. Therefore, the only question before the court is whether the conclusions of law made by the Referee are correct.

■ The authority of the court to revoke a discharge in bankruptcy is confined and limited. It can be exercised only upon a petition filed, complying with 11 U.S.C.A. § 33, which provides:

"The court may, upon the application of parties in interest who have not been guilty of undue laches, filed at any time within one year after a discharge shall have been granted, revoke it if it shall be made to appear that it was obtained through the fraud of the bankrupt, that the knowledge of the fraud has come to the petitioners since the granting of the discharge and that the actual facts did not warrant the discharge."

■ The grounds necessary for revocation of a discharge in bankruptcy due to fraud were well stated in the case of

In re Collins, D.C.E.D.Ark.1907, 157 F. 120, at page 123:

"* * * The court is not prepared to say that in order to prevent a discharge the proofs must be sufficient to warrant a conviction in a criminal case, but it does hold that to justify such action it must appear that he was guilty of such acts as would sustain a civil action for fraud or deceit, and that the statements were either knowingly false or fraudulent, or made so recklessly as to warrant a finding that he acted fraudulently. In Cooper v. Schlesinger, 111 U.S. 148, 4 S.Ct. 360, 28 L.Ed. 382, which was an action for deceit, the Supreme Court, approving the action of the trial judge, said: 'A false representation does not amount to fraud at law unless it be made with a fraudulent intent. There is, however, a fraudulent intent if a man, either with a view of benefiting himself or misleading another into a course of action, makes a representation which he knows to be false or which he does not believe to be true.'"

In a more recent case, Fidelity and Deposit Company of Maryland v. Browder, 5 Cir., 1961, 291 F.2d 34, which was concerned with the question of whether a bankrupt's financial report was "materially false" within the meaning of the Bankruptcy Act, the court stated at page 35:

"* * * In deciding this issue the Referee considered that in order to deny the bankrupt a discharge it must be found that at least one of the statements was not only false in a material degree but was known to be false by the bankrupt or made by him with such recklessness or abandon as to impute knowledge to him. This we consider to be the proper test. See Morimura Arai & Co. v. Taback, et al., 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586."

In applying the above test to this case, this court concurs with the Referee's finding of the absence of the requisite intent of bankrupt to defraud his creditors by his actions.

Counsel for the trustee, petitioner in this case, has cited the case of In re Hannan, 7 Cir., 1942, 127 F.2d 894 (affirming Referee's order revoking a discharge), for the proposition that any fraud of the bankrupt which will defeat a discharge under 11 U.S.C.A. § 32, may be utilized to revoke a discharge theretofore granted under the conditions imposed by 11 U.S.C.A. § 33. This court is fully in accord with this statement of the law. However, in the cited case the complaining parties, the trustee and a creditor, alleged and proved that they had not acquired knowledge of the bankrupt's alleged fraud until a time subsequent to the date of bankrupt's discharge. After stating the above cited proposition, the court, in discussing the further conditions imposed by 11 U.S C.A. § 33, stated at page 896:

"* * * Such conditions are that the party seeking the revocation be not guilty of laches; that the application be filed within one year after the discharge has been granted, and that the knowledge of the fraud has been acquired subsequent to the date of the discharge."

The petition to revoke was filed within the statutory limitation period as set forth in 11 U.S.C.A. § 33. The Referee in his order of May 4, 1961, denying petition to revoke, stated:

"First let me state that I consider the Petition to Revoke the Discharge timely filed. Originally, a discharge was granted July 6, 1959, but was revoked and completely vitiated by an Order of Revocation dated December 16, 1960, within the year specified in the Bankruptcy Act for filing such petitions. The discharge granted April 18, 1960, did not relate back to the July 6, 1959 date of the original discharge, subsequently revoked."

Thus, in the Referee's order dated May 4, 1961, and in paragraph 2 of the petition to revoke, filed November 29, 1960,

the date of the original discharge conclusively appears to be April 18, 1960.

However, in paragraph 6 of the same petition, the following allegation is made:

"6. On or about March 18th, 1960, your petitioner learned of the fraud practiced by the bankrupt in the following manner, to-wit: the bankrupt, in his sworn statement given before the Honorable Lee Cazort, Referee in bankruptcy, upon cross-examination by the attorney for various objecting creditors, admitted to the referee that the said photographic equipment had not been sold to J. R. McConnell, Jr., that the bankrupt was in possession of the photographic equipment and that the bankrupt had always been in the possession of such equipment and that the property had not in fact been sold."

Therefore, as a matter of fact, it appears to be uncontroverted that the latest date that petitioner learned of the alleged fraud was one month prior to the date of the original discharge.

Under Sec. 33 it is essential that knowledge of the fraud must come to the petitioner subsequent to the granting of the discharge in order for this section to become operative. In the case of In re Cuthbertson, D.C.S.D.1912, 202 F. 266, the court stated its interpretation of what is now Title 11 U.S.C.A. § 33, on page 270, as follows:

"A mere casual analysis of this section discloses the following elements, all of which must, in my judgment, appear in the petition to give the court jurisdiction to act: (1) The application must be made by a party or parties in interest. (2) The petition must allege that the petitioner has not been guilty of undue laches. (3) The petition must be filed within one year after the discharge shall have been granted. (4) There must be allegations in effect, if true, that the discharge of the bankrupt was obtained through the fraud of the bankrupt. (5) That the knowledge of the fraud has come to the petitioner since the granting of the discharge. (6) That the actual facts did not warrant the discharge.

\* \* \* \* \* \*

"I am of the opinion that this section of the law requires that the 'knowledge of the fraud has come to the petitioner since the granting of the discharge,' and that it is essential, and is jurisdictional. Note In re Marionneaux's Case, Fed.Cas. No.9,088.

"In each and every one of the foregoing particulars the burden of proof is upon the petitioner, and every requirement of this statute is absolutely essential to be proven. In re Mauzy (D.C.) 163 Fed. 900.

\* \* \* \* \* \*

"There is absolutely nothing in the record submitted to me upon this hearing that would justify a finding upon either of the essentials above numbered 2 and 5. And in this state of the record I do not consider it necessary to make a finding with reference to No. 6.

"In every one of the particulars above numbered, I repeat, the burden of proof is upon the petitioner, and every requirement of the statute is absolutely essential to the power of the court to grant the relief prayed for. All these conditions must exist. In re Upson (D.C.) 124 Fed. 980. The purpose of this limitation is to restrict this process to those frauds which shall be discovered after the discharge. Collier on Bankruptcy, 299. And the grounds on which the application rests must be strictly pleaded. In re McIntyre, Fed.Cas.No.8,823; Lathrop v. Stewart, 6 McLean, 630, Fed.Cas.No.8,-112. Allegations should be made showing that knowledge of the facts constituting grounds for the revocation came to the petitioners since the granting of the discharge. In re Oliver, (D.C.) 133 Fed. 832."

A more specific statement as to the requirement of subsequent knowledge of the fraud is stated in the case of In re Mauzy, D.C.W.Va.1908, 163 F. 900, at page 902:

" * * * 'A discharge in bankruptcy not being voidable for causes previously known to the creditor, no order to take testimony should be made upon a petition to vacate the discharge, unless the petition shows affirmatively reasonable cause to believe that the creditor was ignorant of the ground specified when the discharge was granted.' In re Bates (D.C.) 27 Fed. 604. See, also, In re Oleson (D.C.) 110 Fed. 796; In re Douglass (D.C.) 11 Fed. 403; In re Hoover (D.C.) 105 Fed. 354; Morrison v. Vaughan, 119 App.Div. 184, 104 N.Y.Supp. 169, 18 Am.Bankr. Rep. 704; In re Kolster, 119 App. Div. 184, 104 N.Y.Supp. 169, 17 Am. Bankr.Rep. 52; In re Griffin Bros. (D.C.) 19 Am.Bankr.Rep. 78, 154 Fed. 537; Matter of Winchester (D. C.) 19 Am.Bankr.Rep. 227, 155 Fed. 505; In re Hedley (D.C.) 19 Am. Bankr.Rep. 409, 156 Fed. 314; In re Dauchy, 11 Am.Bankr.Rep. 511, 130 Fed. 532, 65 C.C.A. 78."

The creditors have a duty to ascertain the true financial situation of the bankrupt prior to the discharge, and failure to pursue this line of inquiry, if open to them at this time, will make them subject to laches, as stated in In re Upson, D.C.N.Y.1903, 124 F. 980, at page 982:

" * * * A creditor who desires to oppose the discharge of the bankrupt should see to it that the bankrupt is fully examined as to all his business transactions, and, when opportunity is given to file specifications of objection and test the merits of the application for a discharge, the creditor should be diligent in investigating the facts. * * * The decision of this motion is not based upon the failure of the evidence to show that the actual facts did not warrant the discharge, but upon the ground that it fully appears to the court at this stage of the proceeding that the petitioning creditor has been guilty of undue laches. This court holds that it was incumbent upon the petitioner, when it brought this matter before the court and submitted the motion upon the evidence taken, to show due diligence on its part, which it has failed to do."

The reason for this restriction as to subsequent knowledge appears to be that without it, an application for revocation would be equivalent to a retrial before appeal. 1 Collier on Bankruptcy, 14th Ed., Sec. 15.12 at page 1506.

The learned author further states at Sec. 15.13 on page 1507:

" * * * Allegations should be made showing that knowledge of the facts constituting grounds for the revocation came to the petitioner since the granting of the discharge."

The Referee, in his conclusions of law, held that the petition was timely filed but that the allegation of fraud made by the Trustee was not proven. After having weighed the facts as contained in the entire record of the case, this court is of the opinion that the Referee's conclusions of law were correct and must be sustained. Bankruptcy General Order No. 47, 11 U.S.C.A. following Section 53.

Furthermore, after having examined the chronological sequence of events of this case, as well as the facts as presented by the record, this court is also of the opinion that the trustee-petitioner had ample opportunity to object to the discharge of the bankrupt at the time it was granted after having conclusively learned of the alleged fraudulent transfer previous to the discharge. Therefore, by his failure to act on this prior knowledge, the Trustee is guilty of laches and is precluded from petitioning for a revocation of the discharge. 11 U.S.C.A. § 33.

**522**

It follows that the Referee was correct in denying the petition to revoke, and his order of May 4, 1961, denying said petition should be confirmed.

An order in accordance with the above is being entered today.