In the Matter of Robert E. CARROLL, Bankrupt.

Betty Carroll, Petitioner.
No. 1196.

United States District Court
W. D. Arkansas, Texarkana Division.
March 3, 1955.

Graves & Graves, W. S. Atkins, Hope, Ark., for petitioner.

W. Kendall Lemley, John P. Vesey, Hope, Ark., for respondent.

JOHN E. MILLER, District Judge.

### Statement

This case is before the Court upon a petition for review of the order of the Referee in Bankruptcy entered December 31, 1954, disallowing the claim of the petitioner, Betty Carroll.

Petitioner contends that the Referee's findings of fact were and are erroneous. It would be extremely difficult to effectively summarize the Referee's findings of fact, and for that reason the Court is of the opinion that said findings should be set out in full.

### Referee's Findings of Fact

"Statement

"A petition was filed in this cause by creditors on November 20, 1953, praying an adjudication of Robert E. Carroll as bankrupt. Carroll was apparently absent from the state, and no service of the subpoena was effected. Motion to dismiss the petition was filed January 2, 1954, on behalf of Betty Carroll, a creditor. Response to this petition was filed on behalf of the creditors, and that issue was set for a hearing on February 18, 1954. Prior to the hearing, service upon the debtor by publication was commenced, and after due notice by publication, and no response having been filed, Robert E. Carroll was adjudicated bankrupt on March 9, 1954.

"On November 23, 1953, Betty Carroll filed in this case proof of claim for $9700.00, plus interest, alleged to be secured by the lien of chattel mortgages. The proof of claim was accompanied by a petition to proceed with a sale of the mortgaged chattels which had been commenced under the power of sale reserved in the mortgages. Creditors who had initiated the involuntary petition on which the proceeding is based, filed objections to the claim, which objections were adopted by the Trustee after his election. The matter came on for hearing on April 20, 1954, upon due notice, Betty Carroll appearing in person, and by her attorneys, W. S. Atkins and Albert Graves; the creditors appeared by their attorney, John Vesey, and the Trustee appeared pro se. The Court having heard the testimony of the witnesses, considered the exhibits and arguments of counsel, took the matter under advisement, and granted the attorneys for Betty Carroll time in which to obtain the deposition of the bankrupt, which time was extended, but the deposition has never been obtained. The Court, being well and sufficiently advised in the premises, now makes and files the following Findings of Fact and Conclusions of Law, separately stated.

"Findings of Fact

"(1) The claimant, Betty Carroll, twenty-three years of age, is the daughter-in-law of the bankrupt, having married his son in 1948, and obtained a divorce in July of 1953. Betty Carroll

came to Hope, Arkansas, with the bankrupt's son in March, 1953, and resided with the bankrupt and his wife. Her husband left her about April 15, 1953, at which time she commenced working as a waitress in the Diamond Cafe which was owned and operated by Robert E. Carroll, at a salary of $35.00 per week. She continued at this salary until August, 1953, when she was paid $50.00 per week. She had had no previous experience in this business before she commenced work in April, 1953. She continued to reside with Robert E. Carroll until the latter separated from his wife in June 1953, and thereafter continued to reside with the wife of the bankrupt, Minnie Lou Carroll. Minnie Lou Carroll also worked in the cafe. Neither of the Carroll women had any managerial duties in connection with the cafe business. Minnie Lou Carroll obtained a divorce from the bankrupt on November 10, 1953, upon a Complaint filed September 12, 1953. During these domestic difficulties, Minnie Lou Carroll and Betty Carroll continued to work in the cafe which was not closed until November 10, 1953, although Robert E. Carroll seems to have left Hope, Arkansas, finally on or about November 1, 1953, and to have been absent a considerable amount of the time prior to that date.

"(2) The claim filed by Betty Carroll is based upon the balance due on four promissory notes executed by Robert E. Carroll to Citizens National Bank of Hope, Arkansas, one dated June 19, 1953, in the amount of $8000.00; one dated July 17, 1953, for $400.00; one dated July 17, 1953 for $1800.00; and one dated September 11, 1953, for $1000.-00. Partial payments of principal and accrued interest by Robert E. Carroll left a principal balance due of $9700.00.

"(3) On June 23, 1953, Robert E. Carroll executed and delivered to Citizens National Bank of Hope, Arkansas, a chattel mortgage covering substantially all of the fixtures and equipment of the cafe to secure payment of the amounts then owing the bank, as well as any future advances, which mortgage was filed of record June 24, 1953. On September 23, 1953, the bankrupt executed and delivered to Citizens National Bank of Hope, Arkansas, a chattel mortgage covering the stock of goods owned by the bankrupt in connection with the cafe, to further secure the indebtedness.

"(4) A payment of $500.00, and accrued interest, was made on the $8000.00 note on August 13, 1953, and a like payment of $500.00, plus interest, was made September 11, 1953. On September 13, 1953, there was a payment of $300.00, plus interest, on the $1800.00 note, and on September 11, 1953, $200.00 was paid on the $400.00 note.

"(5) On October 23 and 24, 1953, Robert E. Carroll, Betty Carroll, W. S. Atkins, attorney for Betty Carroll, appeared at the Citizens National Bank and advised that it was desired to pay the notes of Robert E. Carroll then due the bank, and have them assigned to Betty Carroll, along with the chattel mortgages which secured their payment. In payment of the notes the bank received a cashier's check for $4000.00 which had been purchased on October 21, 1953 from Worthen's Bank of Little Rock, Arkansas by Robert E. Carroll in the assumed name of J. R. Richards, and made payable to Betty Carroll; $1700.00 in cash; and Robert E. Carroll released to the bank four $1000.00 negotiable bearer bonds issued by the United States of America which the bank had been holding in trust for him. The statement was made at the time that Betty Carroll had that morning given Robert E. Carroll $4000.00 in cash in lieu of the bonds which were released. The bank endorsed the four notes to Betty Carroll without recourse, and executed and delivered to her an assignment of the chattel mortgages. Her claim in this proceeding is founded upon these notes and the assigned chattel mortgages.

"(6) There is no evidence or claim that Betty Carroll personally furnished the funds which were used to purchase the notes from the bank. Her testimo-

ny is that in July or August of 1953, Robert E. Carroll suggested that she buy the cafe. About September 1, Robert E. Carroll agreed to sell and she agreed to buy the cafe for $12,000.00 upon the condition that it be cleared of debt, and that Carroll effect an assignment of the lease to Betty Carroll. There was no written agreement, but she stated that she did have an unsigned Bill of Sale which was not offered in evidence. Carroll did not clear the debts or effect assignment of the lease, and nothing further seems to have been done until about the middle of October. At that time Betty Carroll states that Robert Carroll discussed with her the $9700.00 debt to the bank, advised that the bank was pressing for payment, and that unless something was done, the mortgage would be foreclosed. He suggested that she buy the debt since it was secured. She agreed to this, and, after allegedly consulting her attorney, gave Robert E. Carroll $9700.00 in cash which he was to take to the bank to purchase the notes in her behalf. No receipt or other evidence appears to have been taken from Robert E. Carroll when this $9700.00 in cash was placed in his hands. Carroll did not go to the bank immediately, but Betty Carroll does not appear to have been concerned about his failure to produce the notes forthwith or otherwise account for the $9700.00 cash. She next heard from him on October 23rd when he asked her to come to his room to discuss the mortgage. At that time he suggested that she get her attorney and go with him to the bank to work out the transaction, and this was done. However, Robert E. Carroll did not return the cash to her, but gave her the cashier's check for $4,000.00 which had been purchased from Worthen Bank, and, according to her story, she permitted him to retain $4,000.00 of the cash in lieu of the negotiable Government bonds which were being held in trust for him by the Citizens National Bank.

"(7) Betty Carroll had no assets of her own with which to consummate this transaction. Her greatest earnings had been $50.00 per week as a waitress, and there is no evidence or contention that she had other assets or property. Her explanation of the source of funds is that a friend loaned her $11,000.00 upon her note which was to be secured by a mortgage that was never executed; that she was to purchase the business and effect a partnership with her friend who would own a one-half interest, and she would repay half of the loan from the earnings of the business. There was no written partnership agreement, and the alleged note was not offered in evidence. Betty Carroll declined to identify her benefactor when first on the stand, but stated that she would do so after a recess in the hearing. Upon returning to the stand she again declined to name the party who allegedly advanced the $11,000.00 although she was warned in open Court by the Referee that her failure to do so would almost inevitably result in a denial of her claim in the light of other evidence in the case. In the face of this warning, Betty Carroll still declined to disclose the source of funds used to purchase the notes.

"(8) The evidence establishes that Robert E. Carroll suffered a fire loss in March 1953, and received a cash settlement of $14,000.00. He first converted the proceeds into a cashier's check issued by Citizens National Bank of Hope, Arkansas, in April 1953, which he retained until June 16, 1953. At that time the bank purchased on his behalf $14,000.00 worth of negotiable bearer bonds issued by the United States. Carroll obtained these bonds from the bank, except for the four which were later transferred to the bank in connection with payment and assignment of the debt to Betty Carroll. In addition to these funds, Carroll used the $8000.00 borrowed from the bank on June 23rd to purchase additional negotiable Government bonds. Thus, beginning in June 1953, Robert E. Carroll had in his possession cash or its equivalent in the amount of $18,000.00 in the form of negotiable Government bonds;

$3200.00 representing proceeds of other loans from Citizens National Bank, all in addition to the $4000.00 in Government bonds which remained in the bank until October 24th. All of these funds were outside his normal course of business. The cafe account in the bank reflected a fairly normal course of business through October 12, 1953, when deposits ceased, and then the account was closed October 31st.

"(9) There is no evidence that Robert E. Carroll made any substantial expenditures during the period from June until October 24, 1953. He repaid the bank $1500.00 plus interest in August and September. He borrowed $1600.00 from the bank in September, 1953, to purchase a car, and this was repaid in cash on October 24th, when the deal was made for Betty Carroll to purchase the notes. There were no other known expenditures of any consequence prior to October 24th.

"(10) In addition to the money owed Citizens National Bank, there were debts incurred in connection with the operation of the cafe amounting to between $12,000.00 and $13,000.00.

"(11) After Betty Carroll allegedly purchased the notes from the bank, she continued to work in the cafe as a waitress until it closed. During this time Minnie Lou Carroll removed to her home a small freezer unit. Betty Carroll, although now claiming a lien on all fixtures, made no objections to the removal of the property. She also testified that she knows nothing about what happened to the daily receipts of the cafe, although she was working at the cafe until it closed, and owned the mortgage by assignment during the last seventeen days of operation.

"(12) The story related by Betty Carroll is inherently incredible, and her conduct and demeanor while testifying leaves no alternative but to discount her testimony. She is a young girl with no experience in the cafe business. Even during her employment as a waitress, she took not the slightest part in the management of the cafe. While it is possible, it is highly improbable that anyone would place in her hands $11,000.00 in cash with which to purchase this business. Her refusal, in the face of the warning of the consequences, to disclose the source of these funds leads to the conclusion that she would have been obliged to admit that the funds paid the Citizens National Bank were received from Robert E. Carroll, or in the alternative, to commit an act of perjury which could have been easily established. In spite of the domestic difficulties, it is apparent that all of the Carrolls continued to have at least tolerable business associations. It is established that Robert E. Carroll had in his possession a substantial amount of cash up to the time the notes were purchased from the bank. The conclusion from all of the evidence is inescapable that the funds paid the Citizens National Bank on October 24th were in fact the funds of Robert E. Carroll, and that the endorsement of the notes and assignment of the chattel mortgages was part of a scheme by Robert E. Carroll to place these funds out of the reach of his creditors, and at the same time to retain the cafe business through the device of having Betty Carroll assume the position of lien holder, sell the fixtures and equipment under the Power of Sale, and assume apparent ownership of the business, but in fact acting as the agent of, and for the use and benefit of Robert E. Carroll. Thus, the mortgages were transferred to Betty Carroll at the instance of Robert E. Carroll without the payment by Betty Carroll of any consideration for the property, and with the intent of hindering, delaying and defrauding the creditors of Robert E. Carroll.

"(13) By agreement of the interested parties, the property covered by the chattel mortgages assigned to Betty Carroll was sold by the Trustee at public sale, free and clear of all liens, upon the stipulation that all liens thereafter established should attach to the proceeds of the sale."

## Opinion

It is elementary that the Court must accept the Referee's findings of fact unless they are clearly erroneous. Bankruptcy General Order No. 47, 11 U.S. C.A. following section 53; Walker v. Commercial National Bank of Little Rock, Ark., 8 Cir., 217 F.2d 677, 681; In re California Associated Products Co., 9 Cir., 183 F.2d 946, 950; Dunsdon v. Federal Land Bank of St. Paul, 8 Cir., 137 F.2d 84; Equitable Life Assur. Soc. of United States v. Carmody, 8 Cir., 131 F.2d 318, 322; In the Matter of Springs Investment Co., a corporation, D.C.Ark., 123 F.Supp. 856; In re Watson, D.C.Ark., 99 F.Supp. 49, 51; In re Taylor Oak Flooring Co., D.C.Ark., 87 F.Supp. 6, 9; In re Sossaman, D.C.Ark., 39 F.Supp. 113; In re Mays, D.C.Ark., 38 F.Supp. 958, 961, affirmed in 8 Cir., 125 F.2d 693.

■ The Court has considered the entire record in the instant case, together with the briefs, and has concluded that the Referee's findings of fact are based upon substantial evidence and are not clearly erroneous. In addition to the substantive evidence, the Referee had the opportunity to observe the demeanor of the petitioner while she was testifying and to judge her credibility as a witness. His findings are fully sustained by the record, and in fact it is very doubtful whether a finding in favor of the petitioner could have been confirmed by the Court.

■ Petitioner contends that "Under the law there is a prima facie presumption of verity which attaches to written obligations, such as the notes, mortgage and assignment in this case," and that since petitioner's testimony was uncontradicted it must be accepted as true. This contention is answered fully by the Arkansas Supreme Court in the case of Connell v. Robinson, 217 Ark. 1, 228 S.W. 2d 475, wherein the Court, beginning at page 4 of 217 Ark., at page 477 of 228 S.W.2d said:

"It is well settled in Arkansas that the testimony of a party to an action is never regarded as undisputed in determining the legal sufficiency of the evidence. * * *

"This rule has been considered in two recent cases in which the question of retention of title in the sale of automobiles was in issue. In Sykes v. Carmack, 211 Ark. 828, 202 S.W.2d 761 the question in a replevin suit was whether title had been reserved under an oral contract of conditional sale. Appellant Sykes, plaintiff therein, and his son testified that title was retained when the car was sold. The jury found otherwise. In answer to the contention that the verdict was contrary to the undisputed testimony, this court said in 211 Ark. at page 830, 202 S.W.2d at page 763 in affirming the judgment: 'Moreover the jury may not have credited the testimony that there was a reservation of the title. The interest of appellant and his son is such that their testimony may not be treated as undisputed, and this interest makes the truth of their testimony, although not disputed by any witness, a question of fact for the jury. In the case of Skillern v. Baker, 82 Ark. 86, 100 S.W. 764, 118 Am.St.Rep. 52, 12 Ann.Cas. 243, it was held that the general rule that where an unimpeached witness testified distinctly and positively to a fact and is not contradicted, and there is no circumstance shown from which an inference against the fact testified to by the witness can be drawn, the fact may be taken as established and a verdict directed accordingly, is inapplicable where the witness is interested in the result of the suit, or facts are shown which might bias his testimony, or from which an inference might be drawn unfavorable to his testimony or against the fact testified to by him.'

"In a situation where the plaintiff seller of a car claimed retention of

title under an oral contract, in the case of Pugh v. Camp, 213 Ark. 282, at page 285, 210 S.W.2d 120, at page 121, we said, in reversing the trial court for directing a verdict for the defendant third party purchaser: 'So, here, while appellant's testimony, as above set out, was not disputed by any witness, his interest in the litigation is such that his testimony may not be regarded as undisputed, and a question of fact was made for the jury.'

"Appellee argues that the rule of the foregoing cases is not applicable because his testimony is supported by the conditional sales contract— that the introduction of this document made a prima facie case entitling him to a directed verdict in the absence of positive testimony contradicting it by appellant. Johnson v. Ankrum, 131 Ark. 557, 199 S.W. 897 and Smith v. Ryan, 175 Ark. 23, 298 S.W. 498, cited by appellee in support of this argument do not so hold. In both of those cases the action was against the makers of a note, and we held that the introduction of the notes made a prima facie case for the plaintiffs, with the burden on the defendant makers to show their invalidity, on the respective grounds urged in defense—and that a jury question was made. In the instant case, the action is not against the vendee in the alleged conditional sales contract, but against a third party purchaser who contends there never was a valid contract of sale; that it was a subterfuge. In a determination of this question of fact, the challenged document itself adds nothing to the testimony of appellee which is considered as contradicted under our decisions."

In addition to the cases cited by the Court in the above quoted decision, see, Thompson v. Clark, 221 Ark. 955, 257 S.W.2d 42; McCollum v. Graber, 207 Ark. 1053, 184 S.W.2d 264. Compare, Wong Ken Foon v. Brownell, 9 Cir., 218 F.2d 444; National Postal Transport Association v. Hudson, 8 Cir., 216 F.2d 193, 198; Bettinger v. Northwestern Nat. Cas. Co., 8 Cir., 213 F.2d 200, 204; Kasper v. Baron, 8 Cir., 191 F.2d 737, 738; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 440.

Petitioner also contends that the Court is entitled to draw its own inferences from the undisputed facts, In re McClelland, D.C.Cal., 275 F. 576, but the difficulty with that contention is that the Court, upon examining the record, has drawn from the evidence the same inferences that the Referee did, i. e., that the transfer from the bankrupt to the petitioner, Betty Carroll, was without consideration on her part and was fraudulent.

Therefore, the Referee's findings of fact were and are correct and must be sustained.

■■ The Referee, in his conclusions of law, held that the transaction amounted to a transfer by the bankrupt made with intent to defraud his creditors, and was null and void under the provisions of Section 67 of the Bankruptcy Act, 11 U.S.C.A. § 107. And, while the Referee's conclusions of law are not presumptively correct, Walker v. Commercial National Bank of Little Rock, supra, it is clear that they are correct in the instant case and must be sustained.

It follows that the Referee was correct in disallowing the claim of the petitioner, and his order of December 31, 1954, disallowing said claim, should be confirmed.

An order in accordance with the above should be entered today.