**In the Matter of HOT SPRINGS BROAD-CASTING, INC., Bankrupt.**
**No. 59.**

United States District Court
W. D. Arkansas,
Hot Springs Division.
July 26, 1962.

---

2. City of Rochester v. Campbell, 1890, 123 N.Y. 405, 25 N.E. 937, 10 L.R.A. 393.

3. Carroll v. City of Dunkirk, 1922, 234 N. Y. 579, 138 N.E. 454.

7.

Mehaffy, Smith & Williams, Little Rock, Ark., for respondent.

D. D. Panich, Little Rock, Ark., for trustee.

JOHN E. MILLER, Chief Judge.

This controversy is before the court on a petition of Tedesco, Inc., the respondent, for review of an order of the Referee in Bankruptcy, dated December 22, 1961, which allowed the petition of the Trustee to surcharge Tedesco, Inc.

The Referee, after a hearing held on August 18, 19, 24, and 25, 1961, and a hearing on December 19, 1961, made certain findings of fact and conclusions of law which are contained in the opinion incorporated in the order of which review is now sought.

The petitioner, Tedesco, Inc., alleges that it is aggrieved by said order in that the Referee committed error therein by making findings which were clearly erroneous and not supported by substantial or admissible evidence, and furthermore that the Referee's order surcharging Tedesco, Inc., as a defaulting purchaser was erroneous as a matter of law.

On May 22, 1962, the Referee certified the matter to this court. Since that date memorandum briefs in support of and in opposition to the above petition have been furnished the court.

■ With respect to the petitioner's assignments of error, the Referee in his certificate has stated that these assignments of error are insufficient in that they do not conform to the provisions of Sec. 39, sub. c of the Bankruptcy Act,

11 U.S.C.A. § 67, sub. c, (Supp.1961), which require:

"* * * Such petition shall set forth the order complained of and the alleged errors in respect thereto."

It has been consistently held that the judge may either decline to pass upon points not specifically designated or he may simply dismiss the petition. In re Musgrave, (D.C.W.Va.1939), 27 F.Supp. 341; In re Florsheim, (D.C.Cal.1938), 24 F.Supp. 991; see, 2 Collier on Bankruptcy, Sec. 39.22 (14th Ed.1956). This situation arose in the case of In re Inman, (N.D.Maine 1957), 157 F.Supp. 506, at page 508 in which the court stated:

"The third, fourth and fifth assignments of error in this petition allege error in general terms only, viz.: that the Referee used as a determining factor in his opinion evidence or testimony which presumably the petitioner feels should not properly have been considered by the Referee. They do not, however, specify the evidence or testimony involved, and despite close questioning by the Court at the hearing counsel was unable to direct the Court's attention to the specific evidence or testimony of which complaint is made. The authorities hereinbefore cited hold that on a petition to review the Court cannot be compelled to search the record for error, and this Court will not undertake to do so.

"* * * However, it has been said that '* * * where patent and unmistakable error appears in the record, the court may, in the interests of expeditious justice, take cognizance of it.' See In re Florsheim, supra, [D.C.] 24 F.Supp. at page 992. And, it being apparent from this record that the assignments of error are based upon the alleged insufficiency of the evidence, in the interest of expeditious justice the sufficiency of the evidence will now be considered."

■ This court is of the opinion that due to the facts in the present case, which has been actively contested, the interest of "expeditious justice" demands a complete review of the record which has been submitted by the Referee along with his certificate.

Briefly, the facts as reflected by the record and found by the Referee are as follows:

On April 4, 1960, certain creditors of the bankrupt filed their complaint, praying that Hot Springs Broadcasting, Inc., be adjudged a bankrupt. The complaint was referred to the then Referee, Honorable Lee Cazort, on the same date. Summons was issued on April 4, 1960, directing the alleged bankrupt to appear and plead to the petition on or before April 25, 1960, and warning the alleged bankrupt that if it failed to do so, that it might be adjudged a bankrupt by default. The summons was served by the United States Marshal on April 6, 1960, by delivering a copy thereof with complaint attached to Dick Biddle, President of the alleged bankrupt.

The alleged bankrupt failed to appear, and on April 26, 1960, the Referee duly adjudicated Hot Springs Broadcasting, Inc., a bankrupt.

After a hearing conducted on January 18, 1961, the Referee on March 2, 1961, held, inter alia, that the order of adjudication made by default April 26, 1960, constituted a final order and was not subject to attack by virtue of the bankrupt's petition to vacate. The petition to review this order, filed by the bankrupt, was denied by this court which on April 13, 1961, entered an order adopting and confirming the report and order of the Referee adjudicating the corporation a bankrupt.

The Trustee filed his verified petition on November 1, 1960, for authority to employ an auctioneer and to conduct a public sale of the assets belonging to the bankrupt estate free and clear of liens. On November 2, 1960, an order was entered granting the petition of the Trustee. On the same date notice of said sale to be held on November 17, 1960, at the premises occupied by the bankrupt, was duly given to creditors and all persons in interest as is by law provided. The order of the court and the notice of sale provided that the same was to be for cash in hand subject to the approval of the court, and that the transfer of the license to operate Radio Station KBLO was subject to the approval of the Federal Communications Commission and the purchaser would have to make his own arrangements with said Commission for the transfer of said license.

Thereafter, on November 14, 1960, prior to the sale, an amendment to the order of sale was entered, setting forth that the Trustee had been advised that a purchaser at the Trustee's sale would not be permitted under regulations of the Federal Communications Commission to operate the radio station pending consummation and approval as provided by the rules and regulations of the said Federal Communications Commission. The amended order directed that any purchaser would be required to deposit with the Trustee the full amount of the bid in cash, subject to the approval of the court; that the purchaser would forthwith take such steps as may be necessary to comply with the regulations of the Federal Communications Commission with reference to the permit to broadcast; that pending confirmation of said sale by the Federal Communications Commission the Trustee would continue to operate Station KBLO keeping separate accounts of all funds received and debts incurred from the time of the sale; that when and if confirmation of said sale be made by the Federal Communications Commission the purchaser would take possession as of November 17, 1960, and be chargeable with all expenses of operation during the interim period and would be entitled to the receipts of the radio station during such interim period; that final approval of the sale was to be held in abeyance subject to the order of approval of the Federal Communications Commission and if the sale be not approved by said Commission the Trustee should

report back to the Court for further orders as may be proper.

At the conclusion of the sale by the auctioneer, the Referee in Bankruptcy was advised over long distance telephone that Tedesco Inc., had bid $17,000.00 cash; that said bid was the highest and best bid obtainable, and upon recommendation of the Trustee said bid was approved, in conformity with the orders theretofore made and entered, and the respondent deposited with the Trustee in bankruptcy the amount of his bid.

Thereafter, on November 25, 1960, the Trustee's attorney notified respondent's attorneys preparation of the formal order confirming the sale was being held in abeyance pending their advice, and said attorneys were requested to advise how the matter was progressing with reference to transferring the permit. On December 1, 1960, respondent's attorneys advised Trustee's attorney that respondent's Washington counsel had notified them the terms of sale as specified were acceptable to the Federal Communications Commission, and respondent expected to have its part of the application for transfer of the license ready for filing within the next few days. On January 9, 1961, the Trustee's attorney notified respondent's attorneys that no word had been received from the Federal Communications Commission and that since it was necessary to file reports prior to the end of February to comply with regulations pertaining to renewal of the license, respondent was again requested to advise what was transpiring with reference to the application to transfer the permit. On January 11, 1961, respondent's attorneys acknowledged receipt of the aforesaid letter and requested one certified and five ordinary copies of the order confirming the Trustee's sale, but made no mention in said letter of the transfer of the permit. On January 19, 1961, the Trustee's attorney forwarded respondent's attorneys one certified and five carbon copies of the order approving the bid, and again asked for information concerning the status of the application for transfer of the permit.

On February 17, 1961, the Trustee's attorney again wrote respondent's attorneys asking information concerning the transfer of the permit and that such information be forwarded direct to the court or to the attorney. If respondent's counsel responded to the request, he did not advise the Trustee's counsel that application for transfer of the permit had not been filed.

The Trustee's counsel had occasion to call respondent's attorney over long distance telephone on March 24, 1961, relative to the financial condition of Station KBLO, and for the first time learned that application for transfer of the permit had only been filed a day or two prior to the conversation, the substance of which was reported to the court. A letter was addressed to respondent's counsel under date of March 24, 1961, in which said counsel was advised an order would be entered directing that the sum of $1,500.00 be transferred from the deposit made by the respondent so that the Trustee could meet his payroll on the following Monday; and in said letter the respondent's counsel was again urged to expedite securing the approval of the transfer of the permit. The respondent's counsel did not reply to said letter, nor did he file any objection to the transfer of the sum of $1,500.00 from the deposit so made, and said order has long since become final.

On May 4, 1961, respondent's attorney was advised litigation affecting the jurisdictional question of the original petition in bankruptcy filed by creditors had been concluded favorably to the Trustee; and it was the opinion of Trustee's attorney that had it not been for the negligence of some person connected with the securing of the transfer of the permit the station would be ready to deliver to the purchaser, and every effort would be made to hold the purchaser liable for excessive expenses incurred in the operation by reason of the failure of respondent to promptly file the application for transfer of the permit.

On May 24, 1961, respondent's counsel was again notified by registered mail,

copy of said notification going direct to the respondent and to the court, advising that the Trustee was in need of an additional $1,000.00 to meet his payroll and referred to the long distance telephone conversation with respondent's counsel held on March 24, 1961, with reference to a previous withdrawal for payroll expenses, and furthermore the respondent and its counsel were notified in said letter that the Trustee's attorney had learned that the Federal Communications Commission was withholding action on the application for transfer of the permit filed by the respondent because of stock irregularities or ownership by the respondent, which must be cleared, and that this matter as well as the failure to promptly file the application for transfer could not be blamed upon the Trustee. Said respondent was advised if it desired to continue operation of Station KBLO, further advances for payment of salary and expense must be made by respondent, otherwise the court would be asked for an order to close down the radio station.. Thereafter Trustee's attorney received a letter from respondent's attorneys, dated May 29, 1961, in which it was stated the matter had been discussed with respondent's President and that F. C. C. approval of the transfer of the license was expected that week, or the following week at the latest, and respondent would be prepared to take over operation of the station immediately upon F. C. C. approval.

The uncontradicted evidence discloses respondent exercised rights of ownership over Station KBLO from November 17, 1960; that Nickolas Tedesco, respondent's President, directed the Trustee to work out an exchange agreement with Central Air Lines to trade radio time for a credit card; that said trade was consummated and the respondent secured said credit card and used the same without reimbursing the bankrupt estate for the amount of credit so used; that the President of respondent, Nickolas Tedesco, and his brother, an officer of the respondent, conferred with the Trustee in Hot Springs over long distance telephone and directed changes to be made in management policies, and directed the said Trustee by letter on January 20, 1961, to discharge an employee and to employ one of respondent's key personnel, Donald Johnson; that respondent would pay the difference between what the discharged employee was being paid and the amount of the salary the said Johnson actually received; that on January 30, 1961, respondent was advised by the Trustee that in accordance with the last telephone conversation had with Nickolas Tedesco, President of respondent, Trustee had discharged three employees, thereby reducing overhead expenses approximately $900.00 per month.

On August 7, 1961, the Trustee filed a petition herein for an order canceling the aforesaid sale and to assess Tedesco, Inc., the purchaser, with costs incurred in the operation of said station. The Trustee alleged therein that Tedesco, Inc., was not only negligent in filing its application for transfer of the broadcasting permit, but also that Tedesco, Inc., was not able to comply with the rules and regulations of the F. C. C. in certain matters which were known, or reasonably should have been known by the said Tedesco, Inc.; and that the said Tedesco, Inc., was dilatory in complying with the requirements, and that by reason of its failure to comply and other matters as set out in Trustee's petition, the Trustee prayed that the sale held November 17, 1960, be canceled and set aside and that the deposit made by Tedesco, Inc., with the Trustee at the time of the sale be surcharged in the amount of $13,248.86, together with costs and expenses.

Upon the filing of the aforesaid petition, the Referee in Bankruptcy entered an order directing service of copy thereof upon the respondent, Tedesco, Inc., at its office in St. Paul, Minnesota, the respondent at that time having no counsel of record in the State of Arkansas, and further directed that a hearing be held upon the Trustee's petition on August 18, 1961.

Under date of August 15, 1961, the Federal Communications Commission ad-

vised the Trustee's attorney that the application for consent to assign the broadcasting rights of Station KBLO from the Trustee was not filed until March 22, 1961, and that the Commission had not written any letter to respondent since the filing of the application, but that the Commission had withheld action on said application because of matters raised in connection with respondent's application for the transfer of another radio station, a copy of which order of the Commission was enclosed in said letter; that said order pertained to an application filed with the Commission on March 15, 1961, for assignment from Franklin Broadcasting Company of a license and construction permit for Station WMIN, St. Paul, Minnesota, to the said respondent, it being stated in said order that the assignor and the assignee and/or their corporate officers, directors, stockholders, and subsidiary corporations have acquired and disposed of interests in numerous broadcast licenses and permits; that in view of the pattern of conduct with respect to the buying, selling and exchange of broadcast properties on the part of the said individuals, partners, corporations, and/or corporate officers, directors and stockholders, the Commission was unable to find that a grant of the application would serve the public interests, convenience or necessity, but did direct that a hearing be held upon the issues as set out in the particular order which is dated August 3, 1961, all in accordance with various provisions of the Communications Act of 1934, as amended, and pertinent rules promulgated by the Commission.

It is apparent from said order of the Federal Communications Commission the respondent by its own action could not within any reasonable length of time comply with the agreement to consummate the purchase of the assets of the bankrupt estate; and said respondent made no effort to show that the said order of Federal Communications Commission was entered in error, or should not be entered, or that respondent was able to satisfactorily explain its pattern of conduct with respect to buying, selling

and exchanging of broadcast properties as prohibited by the Communications Act of 1934, as amended, and the rules and regulations of the Commission, it being noted that the respondent filed the application with the Commission on March 15, 1961, seeking transfer of the assignment from Franklin Broadcasting Company, while application to transfer the broadcasting rights of Station KBLO was filed on March 22, 1961.

On August 18, 19, 24 and 25, 1961, the Referee conducted a hearing upon the petition of the Trustee and show cause order as to why the petition of the Trustee in bankruptcy for an order canceling the sale held on November 17, 1960, should not be entered, and further to show cause as to why the sum of $17,000 deposited with the Trustee in bankruptcy as the purchase price of the bankrupt estate should not be surcharged in accordance with the terms of the Trustee's petition. At the hearing both sides presented evidence in support of their respective contentions. A transcript of the testimony was made by the reporter and is in the record. Also, the testimony was summarized by the Referee in his certificate to the court.

After hearing evidence submitted by both parties on August 29, 1961, the Referee in Bankruptcy made an order formally canceling the sale made on November 17, 1960. On the same day the Trustee filed a petition asking for authority to make a private sale to George T. Hernreich as of August 24, 1961, of the assets of the bankrupt estate. Thereafter, pursuant to notice to creditors, an order was entered authorizing the sale of the said assets for the sum of $18,025.00 cash; the purchaser to deposit with the Trustee said sum of money and, also, the sum of $5,000.00 cash to guarantee payment of operating expenses or losses, if any, during the interim period required to petition the F. C. C. for a transfer of the operating permit and call letters. The $18,025.00 was deposited in the form of a cashier's check, payable to the Trustee in bankruptcy, and is held intact subject to the orders of the court. The

$5,000.00 operating fund according to the records in this office was practically exhausted during the short period of time it required to obtain approval of the transfer by proper order from the Federal Communications Commission.

After the case was submitted to the court, and after careful consideration of the evidence, pleadings, petitions and orders, etc., the Referee was convinced that the losses incurred by the bankrupt estate were occasioned by the negligence of the respondent, but was not satisfied with the amount of the losses as shown by the exhibits introduced and on his own motion appointed a Certified Public Accountant to compile an audit of the operations of the Trustee from November 17, 1960, through August 24, 1961. The audit was completed by Lubben-Keaton & Company and was filed on December 19, 1961. The audit showed a net operating loss in the sum of $11,552.37 for the period of time under review, against which has been credited $2,500.00 previously drawn by orders of this court from the funds deposited by the respondent, leaving a net loss in the sum of $9,052.-37, which the Referee held should be charged to the respondent by reason of its negligence and failure to complete its bid for the assets of the bankrupt estate in accordance with the orders of the court and the rules and regulations of the Federal Communications Commission.

Thereafter, on December 22, 1961, the Referee in Bankruptcy filed exhaustive findings of fact and conclusions of law, incorporated in an order directing that the sum of $17,000.00 deposited with the Trustee in bankruptcy by Tedesco, Inc., be surcharged with $11,552.37, less $2,-500.00 previously drawn from said fund and charged against the respondent, together with auctioneer's fees and expenses in the sum of $960.56 and $387.40 cost of the audit. The Trustee in bankruptcy was directed to pay the balance to the respondent. On December 29, 1961, the respondent filed a petition asking that the execution or enforcement of the order of December 22, 1961, aforesaid be suspended pending review. Ac-

cordingly, on said date an order was entered suspending enforcement of said order. On the same date, December 29, 1961, the respondent filed its petition for review from the order dated December 22, 1961.

The Referee in his certificate states that since the petition for review was filed in the Referee's office, which is located in the Eastern District of Arkansas, there is lack of jurisdiction. The court is of the opinion that this statement is without merit for the reason that the Referee for the Eastern and Western Districts of Arkansas is the same person, and his only office is located in Little Rock, which happens to be in the Eastern District of Arkansas. Furthermore, the applicable statute, 11 U.S.C.A. § 67, sub. c, (Supp.1961), provides nothing more than the following requirement for filing of a petition for review:

"A person aggrieved by an order of a referee may, * * * file with the referee a petition for review of such order by a judge * * *."

Likewise, Bankruptcy General Order No. 20, 11 U.S.C.A. following Sec. 53, provides as follows:

"Proofs of claim and other papers filed subsequently to the reference, except such as call for action by the judge, may be filed either with the referee or with the clerk. As amended Jan. 16, 1939, eff. Feb. 13, 1939."

See, 2 Collier on Bankruptcy, 14th Ed., Sec. 39.23.

Respondent contends that the findings of the Referee that Tedesco, Inc., was not able to comply with the rules and regulations of the Federal Communications Commission in certain matters which were known at the time of the bidding, or reasonably should have been known at the time of the bidding, were clearly erroneous in that they were supported by inadmissible and unsubstantial evidence.

It is elementary that the court must accept the Referee's findings of fact unless they are clearly erroneous. Bankruptcy General Order No. 47, 11 U.S.C.A. following Sec. 53. Teasdale v.

Prosperity Company, (8 Cir.1961), 290 F.2d 345; In re Leach, (W.D.Ark.1961), 197 F.Supp. 513; In re Carroll, (W.D. Ark.1955), 128 F.Supp. 428.

■ The court has minutely examined and considered the entire record in the instant case, together with the briefs, and has concluded that the Referee's findings of fact are based upon substantial evidence and are not clearly erroneous. Equitable Life Assur. Soc. of United States v. Deutschle, (8 Cir.1942), 132 F.2d 525. In addition to the substantive evidence, the Referee had the opportunity to observe the demeanor of the interested parties while they were testifying and to judge their credibility as witnesses. In re Terry, (E.D.Ark.1951) 97 F.Supp. 635. His findings are fully sustained by the record. In re Leach, supra; In re Carroll, supra. Therefore, the only question before the court is whether the conclusions of law made by the Referee are correct.

The first question of law raised by the respondent is whether under the terms of the order of sale, entered on November 2, 1960, and its amendment entered November 14, 1960, the Referee could surcharge a purchaser for losses in operation prior to a final decision by the F. C. C. either granting or refusing the transfer of the station's license.

The order of sale in question and its amendment have been set forth above, but for purposes of emphasis the pertinent provisions, which are contained in the amendment, provide as follows:

"* * * the purchaser shall forthwith take such steps as may be necessary to comply with the regulations of the Federal Communications Commission with reference to the transfer of the permit to broadcast and the call letters * * *, when, and if, confirmation of said sale to said purchaser is made by the Federal Communications Commission, said purchaser shall take possession as of November 17, 1960, the date of sale, and shall be chargeable with all expenses of operation during such interim period and shall be entitled to the receipts of the radio station during such interim period; * * * final approval of said sale * * * shall be by this court held in abeyance subject to the order of approval of the Federal Communications Commission, and if such sale be not approved by said Commission, then the trustee in bankruptcy shall report back to this court for such further orders as may be proper herein."

Thus the first concern is the question of bankruptcy jurisdiction to determine the liability of the respondent, Tedesco, Inc., in a summary proceeding. In this connection, the applicable statute, 11 U.S. C.A. § 11, (1961 Supp.), provides as follows:

"(a) The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby vested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to—

* * * * * *

"(7) Cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto * * *."

■ The power of the bankruptcy court to adjudicate the liability of a bidder at a Referee's sale in a summary proceeding is well settled. In 4 Collier on Bankruptcy, 14th Ed., para. 70.98, it is stated as follows, beginning at page 1884:

"A court of bankruptcy has summary power over a delinquent purchaser at a sale in the bankruptcy proceedings. He may be ordered to pay the stipulated price or to pay the deficiency resulting from a resale.

The jurisdiction of the court to act summarily in such a matter is the same as that of a court of equity in any judicial sale. It is based upon the view that the purchaser makes himself a party to the proceedings and undertakes to do a particular act under the order of the court."

See Gordon v. Woods, (1 Cir.1951), 189 F.2d 76; In re Childs Co., (2 Cir.1947), 163 F.2d 379; and In re Solantkias, (W.D.Pa.1929), 33 F.2d 200.

The rule and the reason for it have been thus stated in Frazier v. Ash, (5 Cir.1956), 234 F.2d 320, at page 325:

"'Wherever a receiver, by direction of the court appointing him, makes a sale of assets in his possession, the parties concerned in the sale are bound to recognize him as an officer of the court; and consequently the court appointing the receiver, not only has power to enforce in a summary manner the completion of the contract of sale, but the parties involved are deemed to have consented to such a proceeding.'" (Citing cases.)

The respondent contends that the order of sale and its amendment are so worded that any surcharge of the purchaser for operating deficiency could not be imposed until there is a final decision by the F. C. C. as to whether the transfer of the station permit is granted or refused. It is true that in the present case there has been no such final decision, but a fair reading of the amendment to the order of sale, dated November 14, 1960, indicates that the Referee was not foreclosed from acting upon further report of the Trustee in order to preserve the assets of the bankrupt estate. Certainly the principles of equity and fair play dictate the accommodation of the purchaser at a bankrupt sale, as was done by the Trustee in the present case. However, the very foundation of the Bankruptcy Act is bottomed upon the necessity of preservation of the assets of the bankrupt estate for the benefit of the creditors; and this consideration overrides any consideration of subsidiary interests.

As stated in the case of Proctor & Gamble Mfg. Co. v. Metcalf, (9 Cir.1949), 173 F.2d 207, at page 209:

" * * * Where there are even slight circumstances which suggest that there is unfairness to the estate in bankruptcy, a careful consideration should be had on review and a confirmed sale should be set aside if necessary to rectify the situation. While, if referee and District Judge agree, an appellate court will rarely interfere, the District Judge has the responsibility to see that a sale which leaves the estate unprotected should not be confirmed.

"There is a general policy which emphasizes the stability of judicial sales as of great importance in smooth and correct judicial administration. Balancing that, it is of overwhelming importance that the rights of creditors in a concern in bankruptcy should be protected and that a disposal of property on terms which violate the rule should not be permitted to stand."

See, also, Walker v. Harper, (5 Cir.1943), 133 F.2d 418.

Therefore, this court is of the opinion that the order of sale and its amendment, entered November 14, 1961, were sufficiently comprehensive to define the rights of the parties to a judicial sale of the radio station as well as clearly setting forth the conditions applicable thereto.

This brings up the next question of whether the Referee erred in finding that the respondent was guilty of negligence following its application for transfer of the broadcasting permit for the radio station and/or that the respondent was dilatory in complying with the requirements of the filing of the application with the F. C. C. as the basis for canceling the judicial sale and surcharging the respondent, Tedesco, Inc.

The respondent contends that the law of negligence applies which sets up the standard of ordinary care and diligence under the same or similar circumstances, which standards the Trustee

must show were breached by the purchaser. Actually this is not a relevant issue in the case at hand for, as heretofore stated, where a judicial sale conducted by a Referee in Bankruptcy is concerned, it is sufficient for the Trustee to show an inability to carry out the conditions of the sale in order to impose sanctions upon a defaulting purchaser. The facts of the present case are undisputed that during a period of approximately ten months between November 17, 1960, the date of the sale, and August 29, 1961, the date of the cancellation of the sale, the purchaser increasingly asserted its authority over the management of the radio station; the number of advertisers, whose business was the life blood of the radio station, decreased; and at the end of the period it appeared that the purchaser's chances of obtaining the transfer of the radio station's license, or at least a final F. C. C. decision refusing such transfer, were no better or even worse than at the time of the Referee's conditional confirmation of the sale on December 12, 1960. During this period of time the anxiety of the Trustee as to the status of the radio station as a going concern increased, while the purchaser's care about the station's economic fortunes diminished in proportion. The matter crystallized on July 19, 1961, when the attorney for the Trustee mailed the following letter to the respondent purchaser, Tedesco, Inc.:

"This is with reference to the telephone conversation I had with Mr. Israel Krawetz on July 17th.

"The Trustee in Bankruptcy has performed under the agreement of sale and the orders of the Court pertaining to sale of the assets of the bankrupt estate, held on November 17, 1960. It would appear Tedesco, Inc. has not complied with its agreements or with the orders relating to the sale and that approval of the sale and transfer of Radio Station KBLO has been held up by reason of the action of Tedesco, Inc.

"You are advised notwithstanding Mr. Krawetz's statement that Tedesco, Inc. would be agreeable to cancelling the sale, unless said sale has been approved in accordance with the orders of the Court and the outstanding contract and agreement—whether oral or written—between Tedesco, Inc. and the Trustee in Bankruptcy. on or before August 1, 1961, the Trustee in Bankruptcy will be forced to petition the Referee in Bankruptcy for an order cancelling sale of the assets to Tedesco, Inc. and a further order surcharging funds deposited by Tedesco, Inc. at the time of the sale, in accordance with the provisions of the Amendment to Order of Sale, as made and entered on November 14, 1960."

Thus the court is convinced that under the facts as found by the Referee, he was entirely justified in entering an order canceling the sale of November 17, 1960, and surcharging the purchaser for the deficiency in operation of the radio station during the period from November 17, 1960, to August 29, 1961, as a matter of law.

A final contention of the respondent is that the Referee erred by admitting an audit which determined the amount of the deficiency in the operation of the radio station during the period in question. Alternatively, the respondent states that it should be surcharged only for the deficiency incurred during the period from November 17, 1960, the date of the sale, to March 22, 1961, the date of filing its application for a transfer with the F. C. C. since it could do no more to hasten the procedure after the date of the filing.

It is undisputed that the audit was made by a reputable certified public accountant firm in Hot Springs by order of the Referee; that said accountants made a complete report of the radio station's retrograde financial condition during the period from November 17, 1960, to August 29, 1961, by standard accepted accounting methods; and that the books and records of the radio station were available for examination to respondent at all times. The respondent

has not countered this financial report with an audit of its own. Thus the court is of the opinion that the procedure followed by the Referee was permissible in order to determine the exact operational deficiency suffered by the radio station during the period in question.

As to the amount of surcharge, it should cover the entire period from November 17, 1960, to August 29, 1961, since the title of the radio station was vested in the respondent purchaser during the whole time, subject to the terms of the amendatory order of sale. The respondent, as purchaser, was entitled to the receipts as well as being liable for any losses that occurred during the above period. To charge the deficiency between March 22, 1961, and August 29, 1961, to the bankrupt estate would be manifestly unfair, for the Trustee, though operating the radio station during the interim period as directed by the order of sale and its amendment, had no discretion as to policy making, which managerial prerogative had been taken over completely by the respondent. The order of sale and its amendment made it clear upon acceptance or denial of the transfer of the permit by the F. C. C., the purchaser of the radio station would be liable for any operating deficiencies from the date of the sale, November 17, 1960. As stated before, the only difficulty with the present case is that there was no final decision by the F. C. C. prior to the order canceling the sale entered August 29, 1961. However, the action of the Trustee in petitioning the Referee to cancel the sale and to surcharge the respondent purchaser for operating deficiencies in light of the circumstances heretofore stated clearly was within the purview of the terms of the judicial sale conducted by order of the Referee, which provided that if the F. C. C. disapproved the sale, then the Trustee was to report back to the Referee for further orders. Here the action, or inaction, of the F. C. C. amounted to disapproval just as if the Commission had rendered a final decision to that effect. This action on the part of the Trustee, who petitioned the Referee for an order

canceling the sale and surcharging the respondent, was not a premature proceeding, for during the passage of time from the date of sale, the losses of the radio station had mounted steadily, and in due course would have consumed the original purchase price which had been deposited with the Referee.

Therefore, it follows that the Referee was correct in granting the Trustee's petition for an order canceling the sale and in assessing operating deficiencies and costs against Tedesco, Inc., and his order of December 22, 1961, granting said petition should be confirmed.

An order in accordance with the above is being entered today.