In the Matter of Houston Herbert **SIMARD, Bankrupt.**

No. 2189.

United States District Court W. D. Arkansas, Fort Smith Division.

June 7, 1966.

Bethell & Pearce, Fort Smith, Ark., for bankrupt.

Warner, Warner, Ragon & Smith; Don A. Smith, Fort Smith, Ark., for objecting creditors.

## OPINION

JOHN E. MILLER, Chief Judge.

In this action Houston Herbert Simard seeks review of an order denying his discharge and dismissing his petition in bankruptcy. The bankrupt filed his petition for review April 1, 1966, and on April 6, 1966, the Referee in Bankruptcy filed his certificate and attached thereto the objections to discharge filed by Southwest Factoring Corporation and National Distributors, Inc.; a transcript of the hearing on the objections to discharge March 4, 1966; the order denying discharge of March 24, 1966; and the petition for review.

The objecting creditors in their specifications of objections to discharge alleged that the bankrupt obtained money in the sum of $21,959.93 from Southwest Factoring Corporation by making and submitting false invoices and received materials, goods and mechandise in the amount of $24,453.64 from National Distributors, Inc., by making and submitting to National Distributors false financial statements. The Referee's order denying discharge contains the following findings of fact:

### "I.

"That the said Houston H. Simard was an executive of Jackson Furniture Company, Fort Smith, Arkansas, at all times material to said Specification of Objections.

### "II.

"That Jackson Furniture Company, Fort Smith, Arkansas, entered into a Factoring Agreement on September 23, 1963. That while an executive of Jackson Furniture Company, the said Houston H. Simard obtained money in the amount of $21,959.93 from the said Southwest Factoring Corporation by making, publishing or causing to be made or published materially false statements in writing. That the said Houston H. Simard submitted fake invoices and schedules of accounts to Southwest Factoring Corporation concerning Barrack Furniture Company, Allen's Antiques, Badger Antiques, Lee's Antiques, Pollack Antiques, Norris Antiques, and Kelly's Antiques.

### "III.

"That said false statements in writing were delivered to Southwest Factoring Corporation, and that the said Southwest Factoring Corporation extended credit and paid money based upon said false statements.

### "IV.

"That the said Houston H. Simard knew at the time of making and delivering same to the said Southwest Factoring Corporation that said statements were materially false respecting his financial condition."

In conclusion the order denied discharge on the following grounds:

### "II.

"That Houston H. Simard, as an executive of Jackson Furniture Company, obtained money from Southwest Factoring Corporation by making, publishing or causing to be made or published materially false statements in writing, and that in reliance of said writing, the said Southwest Factoring Corporation extended credit and paid money based upon said false statements."

The issue as presented in the petition for review is whether or not the Referee erroneously denied a discharge under 11 U.S.C.A. Sec. 32(c).[1] The Referee pred-

[1] Title 11, U.S.C.A., Sec. 32(c) provides: "(c) The court shall grant the discharge unless satisfied that the bankrupt has * * * (c) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition."

icated his denial of discharge on the finding that the bankrupt obtained money and credit by submitting false statements in writing to the objecting creditors. The parties have submitted briefs in support of their contentions with respect to the petition for review which the court has considered, and the case is now ready for disposition.

The transcript of the hearing of March 4, 1966, establishes, and it is not disputed, that the bankrupt, a managing officer of Jackson Furniture Company, Inc., prepared false vouchers and submitted them to the two objecting creditors and received money and goods; that the bankrupt admitted under oath that he had prepared the fraudulent invoices; and after the Referee ruled that the objecting creditors had made a prima facie case, the bankrupt declined to introduce any further evidence. (TR 30) The facts with respect to the bankrupt's conduct are not in any manner disputed, but in fact admitted by him, and the sole question is whether or not the Referee's conclusion that the bankrupt was not entitled to a discharge is contrary to law. The briefs of the objecting creditors, as well as of the bankrupt, Simard, rely upon substantially the same cases and the same provisions of the statute. In essence, the objecting creditors contend that the facts establish a classic example of obtaining money and credit by submitting false financial statements under the statute, and that the findings of the Referee are therefore not clearly erroneous but are supported by the evidence.

The bankrupt contends that the mere submission of false statements is not grounds to deny a discharge, and that it is against the spirit of the Act to deny a discharge upon the instant record

when it is common knowledge that businessmen in financial straits in the usual course of business submit false statements with the hope of eventually overcoming their financial dilemmas. The brief of the bankrupt relies upon In Re Rea Bros. (D.C.Mont.1917), 251 F. 431, in which the Referee granted a discharge over the objections of creditors that the bankrupt had given them a bad check. The court in that case recognized that a bad check is not a false statement within the provisions of the Act. Likewise, in Obrist v. Christensen (9 Cir. 1954), 337 F.2d 220, the court recognized that a bad check is not a false financial statement. These cases are not, of course, determinative of the instant controversy, nor are the cases cited by the objecting creditors. The citations of both parties, however, recognize the findings of fact of a Referee cannot be set aside unless clearly erroneous. Factual determinations are clearly the province of the Referee. In the instant case the record contains not only substantial evidence to support the findings and conclusions of the Referee, but there is no evidence which would support a contrary finding with respect to findings of fact I, II, III and IV set forth above. The bankrupt admitted executing the false invoices and receiving the goods and money,[2] and the court cannot thus say that the findings of fact of the Referee are clearly erroneous. In Morris Plan Industrial Bank v. Henderson, (2 Cir. 1942) 131 F.2d 975, at page 976:

"General Order 47, 11 U.S.C.A. following section 53, requires the judge to 'accept his [the referee's] findings of fact unless clearly erroneous.' * * * Everyone forms his conclusions from testimony, not only from the words which he hears the witnesses utter

---

2. (Tr. 20)

"Q. Are you in a position to admit the fact that you collected money payable to Southwest Factoring Corporation which you did not remit in the amount of $15,498.17?

A. Well, I have admitted that I did collect money. As to the exact amount I cannot admit that. I'm not sure of the figures.

Q. All right, now just so that I will understand and the court will understand, are you denying the fact that you prepared fraudulent invoices and sent them to Southwest Factoring Corporation for which you received money?

A. No, sir."

but from their appearance when they utter them; and the added weight to be attached to a referee's finding, or to a judge's (if he sees the witnesses) depends upon the fact that he has in effect had evidence before him which cold print does not preserve."

■ The court is not bound, however, by the Referee's conclusions of law, In re Springs Investment Co. (W.D.Ark.1954), 123 F.Supp. 856; In re Carroll (W.D. Ark. 1955), 128 F.Supp. 428; Rhodes v. Federal Land Bank (8 Cir. 1944), 140 F. 2d 612.

The bankrupt earnestly insists that the submission of false invoices does not come within the purview of 11 U.S.C.A. Sec. 32(c); that the invoices submitted in the instant case are not false financial statements within the meaning of the Act; and that the statute must be liberally construed in the bankrupt's favor.

The objecting creditors in their brief cite Albinak v. Kuhn, (6 Cir. 1945) 149 F.2d 108. The bankrupt in that case assigned fraudulent accounts receivable to the objecting creditors. The accounts were not due and owing because the merchandise had not been delivered or manufactured. The bankrupt in that case contended that the invoices did not constitute a financial statement within the terms of 11 U.S.C.A. Sec. 32. The court at page 110 stated:

"The question before us is whether the several assignments of accounts with their respective warranties and covenants already recited, constitute materially false statements in writing respecting the bankrupt's financial condition. That material statements therein contained were false, is, on the appeal, conceded, and the referee found that many accounts were listed in the assignments which had, prior to their date, been collected and the money otherwise used; that other accounts were therein listed which were not due and owing, because the merchandise ordered had not yet been manufactured or delivered. The argument is made that these assignments, notwithstanding their covenants, do not constitute a financial statement, implying, of course, that a financial statement is a term of art and purports to be a complete statement of assets and liabilities by which the precise financial worth of the person making the statement can be determined. However, the statute does not use the phrase 'financial statement.' It refers to a false statement respecting financial condition, made or published 'in any manner whatsoever.' The argument is, we think, tenuous, that a written statement listing as assets accounts which have no existence whatsoever, running into many thousands of dollars and including practically all of the receivables of the assignor, are not statements respecting the maker's financial condition."

In the instant action the factoring agreement executed by the bankrupt in paragraph 7 provides:

"7. The Company hereby warrants to you that assignment to you of each account purchased by you hereunder will thereby vest absolute ownership of such account in you free from any liens, claims or equities of third parties; that each account shall on the date of assignment be based upon a bona fide sale and actual shipment of merchandise and shall be a valid and enforceable obligation of the named customer; and that such merchandise shall be accepted and retained by the customer without assertion of any customer claim."

The invoices admitted to be false contain the following warranty:

"KNOW ALL MEN BY THESE PRESENTS, that the undersigned, for value received, has sold, transferred and assigned and does hereby sell, transfer and assign, to Southwest Factoring Corporation, an Arkansas Corporation (hereinafter called the 'Factor'), its successors and assigns, subject to the provision of that certain agreement, dated _____ heretofore duly executed and delivered by the undersigned and duly accepted by

the Factor, and any amendments thereto (said agreement and amendments being hereinafter called the 'Factoring Agreement'), the accounts receivable listed on the reverse side hereof and all right, title and interest of the undersigned in and to such accounts receivable and in and to all merchandise, the sale of which shall have given rise to such accounts receivable, including all of the undersigned's right of stoppage in transit, replevin and reclamation and as an unpaid vendor.

"For the purpose of inducing the Factor to purchase such accounts receivable, the undersigned hereby reaffirms and warrants all warranties under the Factoring Agreement applicable to such accounts receivable and debtors. In the event of any breach of any such warranty, the Factor, its successors and assigns, shall have such rights as are provided in the Factoring Agreement in the event of any breach of warranty thereunder.

\*   \*   \*   \*   \*   \*

By: /s/ Houston H. Simard
_____
Authorized Signature"

The invoices thus warrant that the account is bona fide and that the goods were delivered and sold. The above quoted statement from the Albinak case seems particularly applicable because the warranty constitutes a false statement as opposed to a false financial statement made or published to obtain money, property or credit. The fraudulent invoice is not a financial statement, but is a false statement respecting the financial condition of the bankrupt made and published to obtain money and credit in violation of 11 U.S.C.A. Sec. 32(c). The Referee's conclusion is correct as applied to the facts because the statute, 11 U.S.C.A. Sec. 32(c), precludes the Referee's granting a discharge when it has been established that the bankrupt made false statements and obtained money or credit from the objecting creditors in reliance thereon. The Referee's conclusion with respect to the denial of discharge under the statute in this case is not only correct but is the only permissible one upon the facts.

An order is being entered today adopting and confirming the Referee's findings and conclusions and dismissing the petition for review.